[Civ. No. 50870. Second Dist., Div. Four. May 18, 1978.]

COVINA-AZUSA FIRE FIGHTERS UNION, LOCAL 2415, IAFF, AFL-CIO, Plaintiff and Appellant, v.
CITY OF AZUSA, Defendant and Respondent.

52

## COUNSEL

Silber, Benezra & Taslitz, Richard J. Silber and Molly Wilson for Plaintiff and Appellant.

George W. Wakefield and Carl K. Newton, City Attorneys, and Burke, Williams & Sorensen for Defendant and Respondent.

## OPINION

**KINGSLEY, Acting P. J.—**

### PROCEDURAL FACTS

Covina-Azusa Fire Fighters Union, Local 2415 (union), has appealed from a judgment denying its petition for writ of mandate. Union sought to compel the City of Azusa (city) to recognize a particular form of public employee bargaining unit. Petitioner alleged that the city failed to follow the requirements of the Meyers-Milias-Brown Act (MMB Act) (Gov. Code, § 3500 et seq.) in its determination of the appropriate public employee bargaining unit for employees of the fire department of the city.

The superior court issued a minute order on June 17, 1976, which both parties agree was intended by the trial court to be a final and appealable order. We so treat it. The minute order denied the petition for writ of mandate. Union filed an appeal from the order.

### THE MMB ACT

The MMB Act was adopted to establish a system of communication between public employers and their employees for the purpose of resolving disputes regarding wages, hours, and other terms and conditions of employment. Other purposes of the act are to improve personnel management and employer-employee relations within the various public

agencies in the state. The act provides a uniform basis for recognizing the right of public employees to join organizations of their own choice and to be represented by such organizations in their employment relationships with public agencies. (Gov. Code, § 3500.)

## FACTS

In the case before this court, the City of Azusa did not adopt a local employee relations procedure either by ordinance or by resolution for the implementation of the act, as authorized by Government Code section 3507.[1] The city has followed its own civil service rules and regulations in dealing with employee organizations.

In 1973, a public employees' organization, the "Azusa Firemen's Association" (not the union herein involved) requested the city to recognize it as an employee representative[2] pursuant to the act. This organization sought to represent the job classification of firemen, battalion chief, and engineer and fire captain. In 1974, the city recognized

[1]The first three paragraphs of Government Code section 3507 read:

"A public agency may adopt reasonable rules and regulations after consultation in good faith with representatives of an employee organization or organizations for the administration of employer-employee relations under this chapter (commencing with Section 3500).

"Such rules and regulations may include provisions for (a) verifying that an organization does in fact represent employees of the public agency (b) verifying the official status of employee organization officers and representatives (c) recognition of employee organizations (d) exclusive recognition of employee organizations formally recognized pursuant to a vote of the employees of the agency or an appropriate unit thereof, subject to the right of an employee to represent himself as provided in Section 3502 (e) additional procedures for the resolution of disputes involving wages, hours and other terms and conditions of employment (f) access of employee organization officers and representatives to work locations (g) use of official bulletin boards and other means of communication by employee organizations (h) furnishing nonconfidential information pertaining to employment relations to employee organizations (i) such other matters as are necessary to carry out the purposes of this chapter.

"Exclusive recognition of employee organizations formally recognized as majority representatives pursuant to a vote of the employees may be revoked by a majority vote of the employees only after a period of not less than 12 months following the date of such recognition."

[2]The petition alleges that the association requested recognition as a "majority" representative. However, MMB does not have provisions for a "majority" representative, which implies an exclusive bargaining representative, without, first, adoption of an employee relations ordinance providing for the same pursuant to Government Code section 3507, and, second, an election among the employees. Since there was no ordinance and no election, it seems apparent that the association was a "recognized employee organization" within the meaning of Government Code section 3505, but not an "exclusive" representative.

the Azusa Firemen's Association as an employee representative for public employer-employee relations for firemen, fire engineers and fire captains. In February of 1975, six of seven fire captains who were employed by the city informed the city that they did not want to be represented by the Azusa Firemen's Association for "meet and confer" purposes for the fiscal year 1975-1976. They expressed a desire to be placed in a "middle-management" classification with respect to considerations of salary, fringe benefits and related matters. The six captains then executed a declaration to this effect.

On April 30, 1975, the union requested that the city recognize it as an appropriate bargaining representative of a unit consisting of fire captains, engineers and firemen. The city responded with a request for proof that the employees within those classifications actually desired to be represented by the union. The city was particularly concerned with the earlier communication sent to the city by the fire captains, in which the fire captains had requested to be considered a separate unit for purposes of meeting and conferring.

Union's counsel sent the city a letter refusing to provide proof of membership in the union. The city attorney then wrote a letter to the union stating that the union must prove that a majority of the fire fighter employees in each of the different classes constituting the proposed unit are in fact members of the union. The city's letter also said that fire captains were management employees within the meaning of the Fair Labor Standards Act.

The city and union (pursuant to § 3507.1 of the Gov. Code), submitted to the Division of Conciliation of the Department of Industrial Relations the dispute between the city and the union, attempting to determine the appropriateness of the unit. The conciliator was unsuccessful in mediating the dispute, and he recommended that the dispute be resolved by mediation or fact finding of other parties, but the city council declined to accept the recommendations. At the city council meeting on June 16, 1975, the council determined that there was a community of interest between firemen and engineers and that firemen and engineers should be in a single representation unit. The union was then recognized as a representative of employees included within the unit.[3]

---

[3]The council resolution purported to recognize the union as the "majority" representative. The word "majority" in the resolution was legally surplusage, although perhaps factually descriptive, since representation of a majority does not by itself bring on the status of "exclusive" representative. See footnote 1.

Union filed the within action seeking a writ of mandate requiring the city to recognize the union as a recognized employee organization under the MMB Act for an appropriate unit consisting of firemen, fire engineers and fire captains.

In a memorandum of intended decision the trial court noted the need for further mediation pursuant to Government Code section 3507.1 and the court ordered further mediation.

The parties met with the conciliator. Union refused to show membership cards to the city attorney, but offered instead to submit signature cards to the mediator.

The writ of mandate was thereafter denied by the court below on the grounds that the unit determined by the city was "not inappropriate."

After the filing of this minute order, the union filed a request for findings of fact and conclusions of law on August 9, 1977. Previously, the union had filed a stipulation allowing it to request findings at a later date. This document was timely filed on July 16, 1976. The findings were never made by the court.

I

The first question is whether an appeal lies from this minute order. The general rule is that an appeal lies from an order denying a petition for a writ of mandate. (*Ross* v. *Municipal Court* (1975) 49 Cal.App.3d 575 [122 Cal.Rptr. 807]; *Kingston* v. *Dept. of Motor Vehicles* (1969) 271 Cal.App.2d 549 [76 Cal.Rptr. 614]; *Cody* v. *Justice Court* (1965) 238 Cal.App.2d 275 [47 Cal.Rptr. 716].) However, whether an order denying a writ of mandate is appealable depends on whether further orders are contemplated. Where the trial court denies the petition and contemplates no further action or orders on appellant's petition, an appeal may be taken from the order. (See *Kingston* v. *Dept. of Motor Vehicles, supra,* 271 Cal.App.2d 549; *Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716 [160 P.2d 816]; Code Civ. Proc., § 581d; Cal. Rules of Court, rule 2(b).) But, where it is clear that a denial of an alternate writ of mandate does not amount to a dismissal of petitioner's petition and further action is contemplated, there is no appeal from an order of denial of a writ of mandate. (*Gibson* v. *Savings & Loan Commissioner* (1970) 6 Cal.App.3d 269 [85 Cal.Rptr. 799].)

In the case at bar, the language of the minute order itself does not call for further action, and an examination of the minute order alone would support the view that the rights of the parties were finally determined by that order, and that an appeal lies.

The union argues that the trial court was in error in failing to make findings. This raises the potential question of whether the order is appealable. ██ Where findings of fact are required and not made, an appeal generally does not lie from a minute order. (See *Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300 [259 P.2d 901].) We proceed, therefore, to determine whether findings of fact were required in this case, and if so, whether the general rule stated above should apply so that no appeal lies.

Where it appears that findings are contemplated, the appeal from a minute order must be dismissed (*Estate of Liddle* (1958) 162 Cal.App.2d 7, 22 [328 P.2d 35], and it is the formal judgment that is appealable (*Wallace* v. *Imbertson* (1961) 197 Cal.App.2d 392 [17 Cal.Rptr. 117]).[4] *Lassen* v. *City of Alameda* (1957) 150 Cal.App.2d 44, 48 [309 P.2d 520], specifically held that where a question of fact is raised by a mandamus proceeding, findings of fact are required unless waived (Code Civ. Proc., § 1109) and where those findings are not made, the order is not final and hence not appealable.

██ However, this court in *Mellinger* v. *Municipal Court* (1968) 265 Cal.App.2d 843, 847 [71 Cal.Rptr. 535], chose instead to follow those cases such as *Petroleum Midway Co.* v. *Zahn* (1944) 62 Cal.App.2d 645 [145 P.2d 371], which hold that, where the order is unsupported by findings, and findings are required, the proper procedure is to reverse rather than dismiss the appeal. In the case before us, we follow the reasoning of *Mellinger,* and reverse rather than dismiss because "the dismissal of an appeal is in effect an affirmance of a judgment or order appealed from." ██ ██ Thus, unless findings were not required in the case before us because of some exception to the general rule, failure to make findings will warrant a reversal. (See *Davis* v. *State Board of Optometry* (1939) 35 Cal.App.2d 428 [95 P.2d 959].) We therefore examine the record and cases to see if there are any circumstances or reasons why findings might not be required in the case at bar.

Findings in a mandamus proceeding may be expressly waived (*Healy* v. *Stationers Corp.* (1964) 228 Cal.App.2d 601 [39 Cal.Rptr. 679]), but the

[4]These two cases do not involve mandamus proceedings.

record before us does not show express waiver. The contrary is shown; the union expressly demanded findings. Also findings are not required in a mandamus proceeding where the pleadings establish all necessary facts and no evidence is offered at trial. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 306, p. 3115.) The court in *Baroldi v. Denni* (1961) 197 Cal.App.2d 472, 477 [17 Cal.Rptr. 647] held that, in a mandate action, where the pleadings are without conflict, and the pleadings established all necessary facts, and no evidence was offered or presented at trial, the hearing is reduced to a question of law and no findings are necessary.

In the case at bar, all evidence was submitted by way of exhibits to the pleadings and the declarations were filed in the proceedings as supplementary to the pleadings. No oral testimony was introduced at trial, although there was argument before the court. However, we cannot say that the pleadings are truly not in conflict, or that there were no questions of fact. The city claims it did meet and confer prior to determining that the captains were management and the union states there was no good faith consultation prior to determining that the captains were to be excluded from the bargaining unit. As such, this presented an issue of fact on which findings should have been made. Also, the issue of whether the city abused its discretion in determining that captains did not have a community of interest with firemen and engineers was also a question on which findings were necessary. Although no oral testimony was taken at trial, the supplementary exhibits and the declarations to the pleadings do raise factual questions and therefore the rule of *Baroldi v. Denni* does not apply here. The court erred in not making findings of fact.

## II

■ The union argues that, under the MMB Act, a local agency must meet and consult in good faith with representatives of an employee organization actually conceded to represent employees, prior to making a determination as to what is an appropriate bargaining unit, whether or not the employee organization has officially become a "recognized" employee organization. We agree.

■ The city, as an alternative to its argument that it did in fact "meet and consult" about the parameters of the unit, argues that it has no duty to meet and consult regarding the appropriate dimensions of the unit until after it has "recognized" the union as an employee representative. On the facts of this case, the problem posed by the city does not arise

since the city does not, and never did, dispute that the union at all times following its request to be recognized represented at least some fire department employees. The city only disputed that the union represented a majority (or perhaps any) of the fire captains. Whether the union represented any fire captains or not, it had a right to be recognized as an employee representative and the duty of the city to "recognize" the union is ministerial (with exceptions not here relevant) once its status as representing at least some employees is conceded. (Gov. Code, §§ 3503,[5] 3507.[6]) Accordingly, the city could not, as the union claims it has done, refuse to meet and consult about the unit determination under the guise of not "recognizing" the union as an employee representative until the unit determination was made. ■ It is, of course, established that the city must "meet and consult" with recognized employee organizations about unit determination matters and that this is required by Government Code section 3507. (*International Assn. of Fire Fighters Union* v. *City of Pleasanton* (1976) 56 Cal.App.3d 959, 975-976 [129 Cal.Rptr. 68].) ■ It appears to us that both the city and the union may have been dealing with each other under a misapprehension of law. The city took the position that it did not have to meet and consult about a *unit* determination which included fire captains unless and until the union demonstrated that it represented a majority of fire captains. This view is clearly erroneous and reflects confusion between the designation of an appropriate unit for the purpose of "meeting and conferring" and the identity of the representatives to be met and conferred with. Recalling that the city had adopted no "rules and regulations" pursuant to Government Code section 3507, for the establishment of exclusive representation, it is irrelevant to the determination of the unit whether the union represented a majority of the employees in the unit, or, for that matter, more than one employee. The union was entitled to be recognized if it represented any employees. ■ The union apparently makes the erroneous assumption that if it represents a majority of the employees in the unit, it must be considered the "exclusive bargaining representative" for all the employees in the unit. This assumption, presumably derived from practice under the National Labor Relations Act (N.L.R.A.), is not true under MMB. Unless and until the city adopts rules and regulations pursuant to Government Code section 3507, providing for exclusive

---

[5]The first sentence of Government Code section 3503 reads: "Recognized employee organizations shall have the right to represent their members in their employment relations with public agencies."

[6]The last sentence of Government Code section 3507 reads: "No public agency shall unreasonably withhold recognition of employee organizations."

recognition following an employee vote, it must recognize all employee organizations representing at least some employees and must meet and confer with each of them about wages, hours, and terms and conditions of employment (Gov. Code, § 3505) and meet and consult with each of them about matters concerning the ground rules pertaining to employee representation relationships (Gov. Code, § 3507), including, of course, the designation of appropriate employee units. ■ The union also argues that it may make the initial determination as to the appropriate unit, which the city may set aside only if it finds the union's designation "unreasonable." The argument is derived from the union's view of procedure under the N.L.R.A. However, section 3507 of MMB clearly leaves such decisions up to the public agency. (*Reinbold* v. *City of Santa Monica* (1976) 63 Cal.App.3d 433, 440 [133 Cal.Rptr. 874].)

■ It follows that the City of Azusa had an obligation to consult in good faith with the union prior to classifying the fire captains as management and prior to excluding them from the bargaining unit which included engineers and firemen.

Our reasoning in *Reinbold* v. *City of Santa Monica, supra,* 63 Cal.App.3d 433, is consistent with what we have said here. In *Reinbold* we said it was improper for the city to fail to meet and consult in good faith under section 3507, prior to excluding the police chief from the bargaining unit.

The union contends that the city was required to meet and consult prior to making a unit determination, even if a unit determination is not a "rule" within section 3507, but rather merely an ad hoc policy. We agree. ■ "[I]f the rules and regulations of a public agency do not meet the standard established by the Legislature, the deficiencies of those rules and regulations as to rights, duties and obligations of the employer, the employee, and the employee organization, are supplied by the appropriate provisions of the act." (*Los Angeles County Fire Fighters Local 1014* v. *City of Monrovia* (1972) 24 Cal.App.3d 289 [101 Cal.Rptr. 78].) Therefore, the standards of the MMB Act apply to making a unit determination, to be a rule within section 3507. It was, therefore, necessary for the trial court to make findings as to whether there was good faith consultation prior to excluding fire captains from the bargaining unit. (*Reinbold* v. *City of Santa Monica, supra,* 63 Cal.App.3d 433.)

Lacking appropriate findings on the issues above discussed, we do not, and cannot, reach the final issue argued by the union—namely that the trial court erred in finding that the adoption of a unit excluding fire captains was not "an inappropriate" determination by the city. If, on remand, the trial court should find that the city did meet and consult in good faith about the *unit determination* with the union, it should then make findings on whether the city abused its discretion in placing the fire captains in a separate unit. ▮▮▮ In several places in its argument, the union makes the unstated assumption that the trial court itself should determine on its own review of the evidence what the appropriate unit is. If this view is held by the union, it is erroneous. The unit determination is made by the city, after consulting with the union. The city's determination may be upset by the courts only for an "abuse of discretion," applying the traditional tests associated with a mandate action brought under Code of Civil Procedure section 1085. If, on remand, the trial court should find that the city has not met and consulted in good faith regarding the unit, it should issue a writ commanding the city to set aside the unit determination and adopt a new unit determination only after appropriately meeting and consulting.[7]

The order appealed from is reversed.

Jefferson (Bernard), J., and Hupp, J.,* concurred.

---

[7]Whether the issuance of such a writ should terminate the present action, leaving the parties to a new lawsuit after a proper meeting has been held, or whether the writ should be treated as an interlocutory order, calling for a further hearing in the trial court after the meeting, is a matter for the discretion of the trial court.

*Assigned by the Chairperson of the Judicial Council.