[Civ. No. 18826. Third Dist. Aug. 28, 1980.]

BARBARA BISSELL et al., Plaintiffs and Appellants, v.
PUBLIC EMPLOYMENT RELATIONS BOARD,
Defendant and Respondent;
OAKLAND EDUCATION ASSOCIATION, CTA/NEA,
Real Party in Interest and Respondent.

COUNSEL

Van Bourg, Allen, Weinberg & Roger, Stewart Weinberg and Robert J. Bezemek for Plaintiffs and Appellants.

Allen R. Link and Stephen H. Naiman for Defendant and Respondent.

Giambroni, Walters, Amis & Jones, Francis R. Giambroni and Jeffery V. Bacich for Real Party in Interest and Respondent.

OPINION

EVANS, J.—This appeal involves the application and interpretation of Government Code section 3540 et seq.,[1] the Educational Employment Relations Act (the act), and presents two questions: (1) does a labor organization have standing under the California Administrative Code to

---

[1]All statutory references are to the Government Code unless otherwise indicated.

petition the Public Employment Relations Board (Board) to rescind an organizational security agreement, and (2) do an individual school employee and the same labor organization have the right to challenge a security agreement election?

The following undisputed facts constitute the prelude to this appeal.

Plaintiff Bissell, a certificated employee of the Oakland Unified School District (District), is a member of United Teachers of Oakland, Local 771, AFT, AFL-CIO (UTO) which is an employee organization described in Government Code section 3540.1, subdivision (d). The Board was legislatively created to administer the Educational Employment Relations Act which deals with relationships between public school employers, employees, and employee organizations. Oakland Education Association, CTA/NEA (Association) is an employee organization as defined in section 3540.1, subdivision (d), and was designated the exclusive representative of certificated employees of the District as defined in section 3540.1, subdivision (e). The District and the Association entered into a collective bargaining agreement which, inter alia, provided for an organizational security arrangement requiring payment of service fees to the Association by District employees not already paying dues.

An election was scheduled to determine whether the organizational security agreement for both current employees and newly hired employees should be rescinded. For purposes of the election, the employees were divided into two units: unit A represented certificated employees performing teaching or related functions for grades kindergarten through twelfth, and B represented children's center teachers, teacher assistants, and assistant supervisors.

Unit A voted in favor of an organizational security agreement for both current and newly hired employees requiring them to pay an agency fee to the Association, while B voted against the organizational security clause. UTO petitioned the Board asking rescission of the organizational security agreement and, together with Bissell, filed with the Board objections to the organizational security election citing five instances of "'serious irregularity in the conduct of the election.'" The regional director of the Board dismissed UTO's objections asserting a lack of standing to object, but did not rule on Bissell's standing to file objections. Plaintiffs then undertook an administrative appeal which was heard and decided adversely to plaintiffs' interests. The mandamus

proceeding ensued, and the trial court properly sustained without leave to amend the demurrer of the Board and Oakland Education Association.

Before undertaking an explanation of our decision upholding the trial court's judgment, we reiterate the fact that the Association had been designated the exclusive representative of the employees of the District following a proceeding which conformed to the provisions of section 3544. That section provides in pertinent part, "An employee organization may become the exclusive representative for the employees of an appropriate unit for purposes of meeting and negotiating by filing a request with a public school employer alleging that a majority of the employees in an appropriate unit wish to be represented by such organization. . . . [¶] (b) The employee organization shall submit proof of majority support to the board. . . ."

The underlying fundamental purpose of the Educational Employment Relations Act is found in section 3540 which provides in part that: "It is the purpose of this chapter to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by such organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy."

In resolving the question presented, the following provisions of section 3540.1 are helpful: subdivision (d) defines an "Employee organization" as "any organization which includes employees of a public school employer and which has as one of its primary purposes representing such employees in their relations with that public school employer. 'Employee organization' shall also include any person such an organization authorizes to act on its behalf." Subdivision (e) defines "Exclusive representative" as "the employee organization recognized or certified as the exclusive negotiating representative of certificated or classified employees in an appropriate unit of a public school employer." Subdivision (i) states, "'Organizational security' means. . . [¶] (2) An arrangement that requires an employee, as a condition of continued employment, either to join the recognized or certified employee organization, or to pay

the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of such organization for the duration of the agreement, or a period of three years from the effective date of such agreement, whichever comes first."

I

After the establishment of an organizational security agreement, Board rules prescribe a procedure pursuant to which a "group of employees in an established unit" may petition to rescind that agreement. (Cal. Admin. Code, tit. 8, § 34020.)

The Board's decision and the trial court's order held that UTO and Bissell did not meet the requirements of Administrative Code section 34020, as UTO was not a "group of employees in an established unit."

■ UTO appears to argue that by analogy to federal labor law it has standing to seek an election to rescind an existing organizational security arrangement. They are wrong. They rely upon a decision of the National Labor Relations Board in *Accurate Molding Corporation* (1954) 107 N.L.R.B. 1087. Although reference may be made to federal labor law precedent in interpreting similar provisions in state labor legislation (*Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616-617 [116 Cal.Rptr. 507, 526 P.2d 971]), the decision relied upon does not support UTO's position as it is factually inapposite. In that case a petition to withdraw union-shop authority of an incumbent union was filed by a rival union. Under applicable federal law, only employees were authorized to file such petitions. The petition was withdrawn and one by an employee substituted. The National Labor Relations Board decision merely held that it was irrelevant, that the petition, otherwise properly filed by an employee, was sponsored or inspired by a rival union. In the present instance the California regulation authorizes a "group of employees" to petition for rescission of an existing organizational security arrangement; UTO, a concededly rival employee organization, did the filing. The Board's decision that a rival employee organization does not constitute a "group of employees" under the administrative regulation was sound. It was founded upon the principle of exclusivity which the act applies to the employee organization chosen as the exclusive representative of the employees for all dealings with the employer. Implicit in the Board's decision is a recognition that the act imposes obligations upon the exclusive employee organization to

the employees it represents: the organizational security agreement provides the financial means by which the exclusive representative may carry out those obligations, thus achieving some measure of stability in the relationships between the employees, the employer, and the exclusive representative.

More importantly, Administrative Code, title 8, section 34020 does not authorize representative action. The meaning of that section of the Administrative Code is clear, unequivocal, and does not present difficulty in interpretation. "A group of employees" is authorized to take action, not a representative organization. Had the agency (Board) intended to permit any labor unit, rival, or representative to take the action, it could have expressly said so when the regulation was adopted. It did not. Moreover, the fact that some employees of the District belong to UTO does not transform that labor unit into a "group of employees" as defined and specified in Administrative Code section 34020. A labor organization is composed of members who may, in their individual capacity, collectively, constitute a group of employees within the meaning of that section; however, the fact remains that applicable regulations do not authorize the labor unit to petition on behalf of the employees. Rather, as in the case of the federal regulation (*Accurate Molding Corporation, supra,* 107 N.L.R.B. 1087), only individual action is authorized and in this instance was not undertaken.

To allow a rival labor organization, possibly motivated by a desire to weaken an opponent, to petition for the rescission of existing security agreements would undermine the system of exclusivity otherwise established by the act. Additionally, although the act provides for a challenge to an existing security arrangement, it contemplates the emanation of such a request from the employees bound by the agreement, not a labor unit. (§ 3546, subd. (b).)

## II

■ It is equally clear that applicable administrative regulations only authorize a "party to the election" to file objections. (Former Cal. Admin. Code, tit. 8, § 33580, subd. (a), now Cal. Admin. Code, tit. 8, § 32738, subd. (a).) We conclude that the "party" designation was not intended to include either UTO as a rival representative organization or Bissell as an individual voting employee.

Section 3546 speaks of "both parties" to the organizational security agreement, i.e., the employer and the exclusive representative, and specifies that only the employer may call for severance of the security portion of the agreement and an election on that subject. Clearly, the employer is a party to the election; the exclusive representative is the other party as it is equally affected by the results of the election. The act and the administrative regulations do not specify or authorize the electors to challenge the election; rather, the authority to challenge the election is confined to either party to that election.

We agree with that portion of the Board's decision which states "[T]o allow individual employees to object to the conduct of organizational security elections could cause endless challenges to valid election results, either because of an employee's personal distaste for mandatory payment, dissatisfaction with the exclusive representative or because of an employee's desire to aide a rival organization in frustrating the exclusive representative's relationships with the employees and the employer."

Neither UTO as a rival labor organization nor Bissell was "a party to the election" as contemplated by the Administrative Code.

III

Finally, plaintiffs contend the trial court applied an incorrect standard of review. They seize upon an isolated portion of the trial court's memorandum decision that the Board "did not abuse its discretion" in denying plaintiffs the right to object to the election. They argue that the trial court applied the standard of review applicable to the administrative mandate (Code Civ. Proc., § 1094.5) rather than the appropriate standard for ordinary mandate (Code Civ. Proc., § 1085). The contention is specious if not frivolous. ▮ Neither the conclusions nor the reasoning of a written trial court opinion provide the basis for challenging an otherwise correct judgment. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 230, pp. 4220-4221.) Moreover, a reading of the entire memorandum decision reveals the obvious; the trial court applied the standard of review appropriate for ordinary mandate. It is noted that the essential question presented was whether plaintiffs were being precluded from the use and enjoyment of a right to which they were entitled. This was the sole question decided by the court. The standard applied was proper. (Code Civ. Proc., § 1085; see also *Mahdavi* v. *Fair*

*Employment Practices Com.* (1977) 67 Cal.App.3d 326, 339 [136 Cal. Rptr. 421].)

The judgment is affirmed.

Paras, Acting P. J., and Lally, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.