[Civ. No. 60943. Second Dist., Div. One. Nov. 10, 1981.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 660, AFL-CIO, Plaintiff and Appellant, v.
CITY OF SANTA BARBARA et al., Defendants and Respondents;
SANTA BARBARA COUNTY EMPLOYEES ASSOCIATION,
Real Party in Interest and Respondent.

460

COUNSEL

Geffner & Satzman and Jeff Paule for Plaintiff and Appellant.

Frederick W. Clough, City Attorney, for Defendants and Respondents.

Wyleen J. Luoma and Steele & Luoma for Real Party in Interest and Respondent.

OPINION

**HANSON (Thaxton), J.**—Service Employees International Union, Local 660, AFL-CIO (hereinafter referred to as Local 660), appeals an order of the superior court denying its petition for writs of mandamus and prohibition to restrain the Santa Barbara City Administrator and Employee Relations officer from holding an election of city employees to determine whether they wished to be represented in their labor negotiations with the City of Santa Barbara (hereinafter referred to as the City) by Local 660 or by the real party in interest, Santa Barbara County Employees Association (hereinafter referred to as SBCEA).

FACTS

In 1971 the City adopted chapter 3.12 of the Santa Barbara Municipal Code, also known as the Santa Barbara Employer-Employee Rela-

tions Ordinance (hereinafter referred to as the Ordinance), to provide for administration of employer-employee relations between the City and various employee organizations representing City employees.

In June 1979 during the term of an existing memorandum of understanding (hereinafter referred to as MOU) between the City and Service Employees International Union, Local 620 (hereinafter referred to as Local 620), Local 660 sought to replace Local 620 as the majority representative of City employees in the general employee's bargaining unit. On June 13, 1979, the City, Local 660 and Local 620 entered an agreement providing for conduct of a decertification election. As a result of the election, Local 660 replaced Local 620 as the majority representative of the general employee's bargaining unit.

Pursuant to the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq., hereinafter referred to as the MMBA) Local 660 and the City entered into an MOU covering the wages, hours and other terms and conditions of employment for employees of the City in the general employee's bargaining unit. The MOU recognizes Local 660 as the exclusive bargaining representative of the employees in the general employee's bargaining unit[1] for the term of the contract, June 30, 1979, to June 30, 1982.[2] The MOU was accepted by the City through a majority vote of the city council.

On March 27, 1980, the SBCEA submitted to the city administrator two petitions signed by a majority of City employees who held positions in, respectively, (1) airport and harbor patrol and (2) water treatment classifications. Each petition requested a decertification election be held to decertify Local 660 as the petitioners' majority representative and to recognize SBCEA as exclusive representative of a new bargaining unit representing these employee classifications.

These petitions were not acted upon until June 15, 1980, when SBCEA renewed its request for creation of the two new bargaining

---

[1]Paragraph 2a of the MOU dated June 30, 1979, provides: "Pursuant to the provisions of Section 3.12 of the Municipal Code of the City and applicable state law, the Union is recognized as the majority representative of the City employees in the general employees unit and as the exclusive bargaining agent for the employees in said Unit."

[2]Paragraph 3 of the MOU dated June 30, 1979, provides: "The City and the Union agree that the term of this agreement shall be three years commencing 30 June 1979 and ending at midnight on 30 June 1982. It is further agreed that the term of this agreement may be extended by mutual agreement."

units and the conduct of a decertification election. On July 22, 1980, the City's municipal employee relations officer, Richard Thomas, unilaterally without bargaining with Local 660 or conducting a hearing, determined that the two proposed bargaining units were appropriate bargaining units within the meaning of section 3.12.090 of the Ordinance and granted SBCEA's request for a decertification election. The election was to be conducted under the supervision of the State Conciliation Service for the purpose of allowing the employees in the newly created water resources bargaining unit and public security bargaining unit to vote on decertification of Local 660 and certification of SBCEA as majority representative.

On September 5 Local 660 petitioned the Santa Barbara Superior Court for peremptory writs of mandamus and prohibition seeking to restrain the City from conducting the decertification election in the specific job classifications concerned. The matter was heard before Judge Boden of the superior court and on October 17 the court issued its order denying Local 660's petition for mandamus and prohibition to prevent the decertification election. Local 660's subsequent petition for writ of supersedeas to stay enforcement of the trial court's order was thereafter denied by the Court of Appeal.

On November 24, 1980, the decertification election took place. Local 660 was decertified as to the newly created water resources and public security bargaining units.

On December 2, 1980, the trial court entered its final judgment denying peremptory writs of mandamus and prohibition, together with its findings of fact and conclusions of law. The court found mandamus inappropriate on the following grounds: (1) the threatened actions of Richard Thomas were neither judicial nor quasi-judicial in nature; (2) neither he nor the City was required under the MMBA to meet and confer with Local 660 regarding the appropriateness of the new bargaining units or to conduct a hearing thereon; and (3) the MOU between Local 660 and the City does not bar a decertification election as to the new bargaining units.

ISSUES

Local 660 contends on appeal (1) that the superior court erred in holding that an MOU between an exclusive bargaining representative and a public employer governed by the MMBA does not bar a decertifi-

cation election during the term of the contract; (2) that an existing bargaining unit can be changed or altered only through collective bargaining with the recognized exclusive bargaining representative for that unit; and (3) that if an existing bargaining unit can be changed or altered through a process other than collective bargaining with the exclusive bargaining representative for that unit, an administrative hearing and a right to appeal are mandatory under the due process and equal protection clauses of the United States and California Constitutions.

DISCUSSION

I

Local 660 first contends that the "contract bar" doctrine, as developed by the National Labor Relations Board (hereinafter referred to as the NLRB), should be applied in the instant case to invalidate an employee election and decertification which was conducted during the three-year term of a collective bargaining agreement between the union and the City. Determination of this question depends on interpretation of applicable sections of the MMBA. (Gov. Code, § 3500 et seq.) The MMBA expresses state policy regarding the collective bargaining rights for most California public employees.

Briefly, the MMBA confers on public employees the statutory right to be represented by employee organizations of their choice. (Gov. Code, §§ 3500, 3502.) This right is subject to the limitations of section 3507, subdivision (d), which permits local governing bodies to adopt rules and regulations providing for exclusive recognition of employee organizations selected by majority vote of the employees in the particular employee's bargaining unit.

Pursuant to this authority, the City has established its own labor relations procedures, codified in its Ordinance as chapter 3.12 of the Municipal Code. Section 3.12.100 of the Ordinance[3] authorizes the city

---

[3]Section 3.12.100 provides: "(a) The Municipal Employee Relations Officer may:

"(1) Determine the majority representative of City employees in an appropriate unit by arranging for a secret ballot election or by any other reasonable method which is based upon written proof, and is designed to ascertain the free choice of a majority of such employees. The employee organization found to represent a majority of the employees in an appropriate unit shall be granted formal recognition and is the only employee organization entitled to meet and confer in good faith on matters within the

administrator to revoke exclusive recognition of an elected majority representative of a particular bargaining unit once a secret ballot election shows that the recognized exclusive bargaining agent no longer represents a majority of employees in the unit. It also prohibits any challenge to the recognized status of an elected majority representative during the 12 months immediately following recognition. In this respect, section 3.12.100 parallels that provision of Government Code section 3507 which permits revocation of majority representative status "only after a period of not less than 12 months following the date of such recognition." Thus, under the applicable statutes and municipal regulations, an election determining majority representative status conceivably could be held every 12 months.

Local 660 contends that an existing MOU entered into by the City and the majority representative for a term of three years operates as a "contract bar" superseding the right of public employees to vote on the question of majority representation every twelve months. The "contract bar" doctrine was developed by the NLRB as an administrative policy designed to "protect the bargaining atmosphere." (*Pioneer Inn Associates* v. *N. L. R. B.* (9th Cir. 1978) 578 F.2d 835, 838.) It prevents conduct of a decertification election during the life of a valid collective bargaining contract, which may be of up to three years duration. (*General Cable Corp.* (1962) 139 N.L.R.B. 1123 [51 L.R.R.M. 1444].)

Federal labor relation legislation has frequently served as the prototype for California labor enactments, and accordingly, the courts have looked to the federal law for guidance in interpreting state provisions when the language utilized parallels that of the federal statutes. (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453]; *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616 [116 Cal.Rptr. 507, 526 P.2d 971].)[4]

---

scope of representation for employees in such unit. This shall not preclude other employee organizations, or individual employees, from consulting with management representatives on employer-employee relations matters of concern to them;

"(2) Revoke the recognition rights of a majority representative which has been found by secret ballot election no longer to be the majority representative.

"(b) The recognition rights of the majority representative designated in accordance with this section shall not be subject to challenge for a period of twelve (12) months following the date of such recognition."

[4]The City argues that only federal *judicial* precedent properly can be applied to analogous labor relation disputes arising under California law. However, our examination of cases on this point reveals that the California courts have not hesitated to refer

Both the National Labor Relations Act (hereinafter referred to as the NLRA)[5] and the MMBA[6] contain similar language restricting decertification elections within 12 months succeeding a representation election but neither statute contains legislative direction or guidelines governing the principles of a contract bar. As a result, the NLRB has developed rules "solely as a matter of administrative discretion under the broad authority delegated to it by Congress under the NLRA." (*Cadiz v. Agricultural Labor Relations Bd.* (1979) 92 Cal.App.3d 365, 373 [155 Cal.Rptr. 213].)

The three-year "contract bar" doctrine constitutes one method by which the NLRB seeks to reconcile the conflicting twin policy goals of federal labor relations legislation: (a) giving workers maximum freedom in selecting or rejecting their collective bargaining representative and (b) attaining stability in collective bargaining agreements by according relationships established by collective. bargaining contracts sufficient time to develop and mature. (*Cadiz v. Agricultural Labor Relations Bd., supra*, 92 Cal.App.3d 365, 373-374.)

In California the MMBA is silent on the subject of the contract bar doctrine. However, the Legislature has explicitly adopted the contract bar in various statutes regulating public employer-employee labor relations passed since 1975. Government Code section 3544.1 (adopted in 1975) relating to public school employees incorporates the contract bar doctrine without limitation as to term. In the area of higher education employees, Government Code section 3574 (adopted in 1978) incorporates a three-year contract bar doctrine. Public Utilities Code section

---

to any federal precedent, including both NLRB and federal judicial decisions, to resolve disputes over the meaning of sections of the MMBA or other California employee relation legislation. (See, e.g., *Vernon Fire Fighters v. City of Vernon* (1980) 107 Cal. App.3d 802, 816 [165 Cal.Rptr. 908]; *Bissell v. Public Employment Relations Bd.* (1980) 109 Cal.App.3d 878, 883 [167 Cal.Rptr. 498]; *Service Employees' Internat. Union, Local No. 22 v. Roseville Community Hospital* (1972) 24 Cal.App.3d 400, 408-409 [101 Cal.Rptr. 69].) The contract bar doctrine has also been applied by the federal courts. (See, e.g., *Pioneer Inn Associates v. N. L. R. B., supra*, 578 F.2d 835, 838-839.)

[5]Section 9(c)(3), 29 United States Code section 159(c)(3), of the NLRA provides in pertinent part that "No election shall be directed in any bargaining unit or any subdivision within which, in the preceding twelve-month period, a valid election shall have been held."

[6]Government Code section 3507 provides in pertinent part as follows: "Exclusive recognition of employee organizations formally recognized as majority representatives pursuant to a vote of the employees may be revoked by a majority vote of the employees only after a period of not less than 12 months following the date of such recognition."

125521 (adopted in 1975) provides that an existing MOU cannot constitute a bar to decertification for more than two years.

These legislative enactments, passed several years after section 3507 was last amended (in 1971), manifest a growing legislative acceptance of the contract bar doctrine. ■ However, the adoption of the contract bar doctrine in specific statutes applicable in limited areas of employment does not constitute conclusive proof that the Legislature intended the doctrine to apply to local government employer-employee relations, for we cannot assume the existence of an intent that finds no expression in the words of the statute. (*Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 7 [125 Cal.Rptr. 408].)

We specifically note that the Legislature has not seen fit to apply the doctrine uniformly to various areas of public employment—in one area, the contract bar operates for two years, in another, three years, and in yet a third no time limitation is specified. From this differential treatment, we discern that the Legislature has tailored the contract bar doctrine to fit the particular needs of each area of labor relations. The time periods selected represent the result of legislative balancing of the potentially conflicting purposes of the Government Code (§ 3500), the employees' rights to free association on the one hand and the need for a stable bargaining atmosphere on the other.

What Local 660 urges here is that this court determine that the heavier emphasis be placed upon stability in labor relations during the pendency of a contract or MOU by giving preference to this value above the goal of assuring to employees the right to change their representative. As we have already noted, this court has no authority to act in place of the Legislature by adopting the contract bar rule where none has been authorized. (Code Civ. Proc., § 1858; *International Assn. of Fire Fighters Union* v. *City of Pleasanton* (1976) 56 Cal.App.3d 959, 976 [129 Cal.Rptr. 68]; *United Clerical Employees* v. *County of Contra Costa* (1977) 76 Cal.App.3d 119, 129 [142 Cal.Rptr. 735].) Only the Legislature can determine whether the stability of established contractual relations outweighs the rights of workers to decertify their bargaining representative. (See *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325 [109 P.2d 935]; *Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785], cert. den. 404 U.S. 1015 [30 L.Ed.2d 662, 92 S.Ct. 672].) Moreover, the 12-month bar of section 3507 insures some stability to labor relations for the 12-month period after recognition of an exclusive bargaining agent. A

decertification petition can only be filed after a union has been a representative for more than 12 months. This arrangement suggests an attempt by the Legislature to balance the competing goals by allowing a degree of stability while nonetheless protecting free choice.

Therefore, for this court to impose a three-year contract bar doctrine as suggested by Local 660 would constitute an unwarranted invasion of a legislative prerogative.

## II

Local 660 next argues that the City and its administrator, Richard Thomas, violated the MMBA when they refused to "meet and confer" with Local 660 with respect to the issue of the appropriateness of proposed new bargaining units within the general employee's bargaining unit. The trial court in its findings of fact and conclusions of law determined that neither the MMBA nor any other provision of law required the City to meet and confer with Local 660 on this subject.

This determination is supported by statutory provisions. The applicable language of section 3507 provides that a public agency "may adopt reasonable rules and regulations after consultation in good faith" with representatives of employee organizations for the administration of employer-employee relations. Exclusive representation and unit determination are among the topics expressly made subject to such consultation. (§ 3507, subd. (d).)

It was under the authority of section 3507 that the City following negotiations concerning its provisions with representatives of then existing employee organizations in 1971, adopted the provisions contained in the Ordinance (Santa Barbara Mun. Code, ch. 3.12). Section 3.12.100 of the Municipal Code requires the city administrator, acting as the municipal employee relations officer, to determine the appropriateness of a new bargaining unit proposed by an employee organization seeking formal recognition as a majority representative. Upon a finding that the proposed new unit meets the criteria specified in section 3.12.090, the municipal employee relations officer is required to determine that the bargaining unit is appropriate. Section 3.12.100 nowhere provides for meeting and conferring with the incumbent majority representative. By consulting with Local 660's predecessors concerning the intent of Municipal Code section 3.12, the City fully complied with the requirements of Government Code section 3507.

Local 660 argues that under section 3507 the City must "meet and consult" with recognized employee organizations about unit determination matters. (*Covina-Azusa Fire Fighters Union v. City of Azusa* (1978) 81 Cal.App.3d 48, 59 [146 Cal.Rptr. 155].) However, in the *Fire Fighters* case the Court of Appeal, because the City of Azusa had adopted no rules and regulations pursuant to section 3507, qualified this broad principle with the proviso that "Unless and until the city adopts rules and regulations pursuant to Government Code section 3507, providing for exclusive recognition following an employee vote, it must recognize all employee organizations representing at least some employees and . . . must meet and consult with each of them about matters concerning the ground rules pertaining to employee representation relationships (Gov. Code, § 3507), including, of course, the designation of appropriate employee units." (*Covina-Azusa Fire Fighters Union v. City of Azusa, supra*, 81 Cal.App.3d at pp. 59-60.)

■ The quoted language of the opinion makes clear that a public agency must meet and consult with any recognized employee representative prior to adopting (or modifying) rules and regulations themselves, but it need not do so when determining whether an individual proposed bargaining unit is appropriate under rules previously adopted. The City adopted Municipal Code section 3.12 in 1971, after meeting and consulting with existing employee representatives, thus satisfying the MMBA requirements.

### III

Finally, Local 660 challenges the constitutionality of section 3.12.090 of the Ordinance as violative of its rights to due process and equal protection. Although Local 660 did not raise its constitutional claim before the trial court, since it involves a pure question of law it can properly be presented on appeal. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].)

Specifically, Local 660 charges that section 3.12.090 of the City's employer-employee relations ordinance unconstitutionally deprives it of its status as exclusive bargaining representative for the employees in the general employee's bargaining unit by failing to provide for an administrative hearing.

As the trial court found, neither the MMBA nor section 3.12.090 requires the City to conduct a hearing regarding the appropriateness of

new bargaining units proposed within the general employee's bargaining unit or to provide for an appeal by the incumbent employee representative from an adverse ruling on a determination of the appropriateness of a new bargaining unit. It is undisputed that no hearing was conducted on the subject of the proposed bargaining units prior to their approval by the city administrator.

Constitutional due process requires that public agencies provide notice and a hearing before taking action which deprives a party of liberty or a property interest. (*Board of Regents v. Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701].) Local 660 urges that its status as majority representative is a property interest entitled to due process protections.

While the Supreme Court in *Roth* observed that property interests protected by procedural due process extend beyond actual ownership of real estate, chattels or money, the decision did not establish that such rights are unlimited. (*Id.*, at p. 572 [33 L.Ed.2d at p. 557].) The court observed that in order to have a valid property interest which may be entitled to due process consideration, a person must have more than an expectation or need of a particular benefit—he must have a legitimate claim of entitlement to it. Such interests are created, not by the Constitution but by "rules or understandings" that stem from some independent source, such as state law. It is these "rules or understandings" which support certain specific claims of entitlement to benefits. (*Id.*, at p. 577 [33 L.Ed.2d at p. 560].)

In *Roth*, a nontenured assistant professor contested his dismissal from a teaching appointment in the Wisconsin University system upon expiration of his one-year contract. The contract did not provide for renewal, and as a nontenured employee, Roth had no rights to renewal under Wisconsin law. Consequently, the court held that he had no cognizable property interest under the 14th Amendment. (408 U.S. at p. 578 [33 L.Ed.2d at p. 561].)

Just as in *Roth*, Local 660's property interest, if any, is conditioned by the terms of the MOU with the City. The MOU provides that it shall continue in effect for a term of three years from June 30, 1979, to June 30, 1982. However, that agreement by its terms specifically provides that it is subject to California's MMBA and provisions of the ordinance (specifically §§ 3.12.090, 3.12.100). Both the state and local legislation prohibit revocation of the recognition "rights" of a majority

representative only during the 12 months following the date of recognition. (Gov. Code, § 3507; Santa Barbara Mun. Code, § 3.12.100.)

■ By terms of the MOU, Local 660 expressly acknowledged that a decertification election could be held after expiration of the 12-month period. Since there is no statutory authorization for a contract bar as to collective bargaining agreements covered by the MMBA, the fact that the MOU has a three-year term does not prevent such an election taking place under the circumstances herein presented. Once the 12-month period following recognition of Local 660 as exclusive bargaining agent had expired, Local 660 had no cognizable property interest supported by "rules and understanding" that would be entitled to due process protection.

In any event, Local 660 was not deprived of its status as exclusive bargaining agent for general City employees by the city administrator's decision approving the appropriateness of the proposed new bargaining units. Local 660 lost its alleged "right" or status when a majority of employees holding positions in the proposed bargaining units voted to replace it with SBCEA.

■ Local 660's other constitutional claim, namely that section 3.12.090 of the ordinance violates its right to equal protection by affording only the SBCEA the right of appeal from an adverse determination by the City's employee relations officer, is likewise untenable.

Section 3.12.090 cannot be considered violative of equal protection unless it clearly appears that there is no reason sufficient to justify the different classification applied to Local 660. (*Patton* v. *La Bree* (1963) 60 Cal.2d 606, 609 [35 Cal.Rptr. 622, 387 P.2d 398]; *California Federation of Teachers* v. *Oxnard Elementary Sch.* (1969) 272 Cal.App.2d 514, 529 [77 Cal.Rptr. 497].)

In the instant case, Local 660 and SBCEA are not similarly situated. Local 660 is the incumbent exclusive employee representative, SBCEA is merely another organization seeking to be recognized as an employee representative for proposed bargaining units not yet established. It is not the determination that a proposed bargaining unit is appropriate which establishes that unit. The new bargaining unit only comes into existence after it has successfully carried the decertification election. On the other hand, in the event the city administrator declines to approve a proposed bargaining unit as appropriate, no election is held.

Consequently, the petitioning organization can then appeal to the civil service commission.

There is a valid distinction between the categories of employee organizations here concerned which justifies their differential treatment under the statute. As a result Local 660 is not deprived of equal protection under the law.

## DISPOSITION

The judgment (denying the petition for peremptory writs of prohibition and mandamus) is affirmed.

Lillie, Acting P. J., and Dalsimer, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 20, 1982.