[Civ. No. 42327. First Dist., Div. One. July 27, 1978.]

STATE ASSOCIATION OF REAL PROPERTY AGENTS et al.,
Plaintiffs and Appellants, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DEPARTMENT OF TRANSPORTATION et al.,
Real Parties in Interest and Respondents.

**COUNSEL**

Scott Noble for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Gordon Zane, Deputy Attorney General, for Defendant and Respondent.

Harry S. Fenton, Emerson Rhyner, William M. McMillan, James L. Kirschman and Stephanie G. Sakai, for Real Parties in Interest and Respondents.

**OPINION**

**NEWSOM, J.**—This is an appeal from a judgment of the Alameda County Superior Court denying a petition for a writ of mandamus, or, in the alternative, prohibition. Appellants are four state employee organizations and a number of individual Department of Transportation employees. The lawsuit arose under the following circumstances.

In August of 1975 the department, faced with certain revenue cutbacks, submitted to the State Personnel Board, as required by law, a scheme or method for implementing the planned layoffs. After these proposals had been calendared for a September 4 hearing, appellants filed with the board an "Appeal and Request for Investigation and Hearing" alleging that the department had formulated its proposals without complying with the "meet and confer" laws required by Government Code sections 3529 and 3530, and that the proposals were consequently not before the board. At the same time appellants requested the board to make its own

determination concerning the department's compliance with "meet and confer" laws, and to stay proceedings until compliance had been effected.

At the September 4 meeting the board took appellants' request under submission and, later, on September 18, adopted formal resolutions concerning the exemption of certain classes from the proposed layoff, the delineation of classes to be affected and the areas of layoff. At the same time the board denied appellants' request for a decision on findings concerning the department's compliance with "meet and confer" laws, stating that its jurisdiction to so decide and find was doubtful, but to the extent such jurisdiction obtained, it found that the department had complied with the law.

On October 23, 1975, appellants filed writ proceedings in the Alameda Superior Court, naming the board, the department and the department's director as respondents, and alleging violation of the "meet and confer" provisions of the Government Code. Appellants also sought a temporary restraining order and preliminary injunction prohibiting the department from distributing layoff notices.

After denial of the requests for injunctive relief, the trial court conducted hearings over a four-day period, at the conclusion of which it filed a memorandum of intended decision followed by extensive findings and a judgment denying the petition and discharging the alternative writs previously issued. The instant appeal followed.

The single issue presented by the appeal is whether substantial evidence supports the trial court's implied finding that respondents met and conferred with appellants in good faith.

We first observe that the parties held numerous meet and confer sessions prior to the actual layoff of employees, and that in fact, as a result of such discussions, the department materially changed its initial plans. This we find reflected in the trial court's findings, as follows:

"4. That the Department made its decision concerning the need for staff reduction prior to meeting and conferring with petitioners because of negative revenue projections; it, nonetheless, made available the information supporting this decision and engaged in many meet-and-confers concerning the question of whether or not a reduction in force would be achieved by attrition or layoffs;

"5. That the decision that attrition would be insufficient to achieve the necessary staff reductions was a gradual one, and, throughout, petitioners and their agents were privy to the unfolding situation;

"6. That a more exhaustive examination of the necessity, timing, and scope of the layoff might have resulted in a different number and/or schedule of layoffs; however, petitioners have not shown that any substantial request for information or a meet-and-confer session was denied them by the Department;

"7. That the Department altered proposals announced to employees and employee organizations at their request after conducting meet-and-confer sessions on several occasions;

"8. That the culminating meet-and-confer in December, which both sides agree was most productive, was the consequence of both sides being educated as to the issues, the need to get on the record their respective points of view, and, by this time, a developing certainty as to the surrounding facts, and

"9. No bad faith is shown on the part of respondents."

Notwithstanding these findings, appellants argue that, as a matter of law, no "meet and confer" compliance was achieved because the decision to make some reductions was arrived at unilaterally.

It is true that the trial court in fact found that prior to August 4, 1975, the department had arrived at *a* plan of action irrespective of further meet and confer sessions. Thus, finding of fact 18:

"Prior to August 4, 1975, the Department arrived at the following determinations of policy and of a course of action in connection with the reduction of the Department staff: (1) that the Department staff would be reduced by 3,300 employees by July 1, 1976; (2) that the reduction would take place in two stages; (3) that during the first stage; which would be completed by January 1, 1976, one-half of the total reduction would take place; (4) the remaining reduction would take place by July 1, 1976; and (5) that if the reductions could not be accomplished within these time periods by attrition, then they would be accomplished by the layoff of Department personnel."

It does not follow from this, however, that the court found that its decision was frozen and irrevocable: to the contrary, as finding 20 shows, material changes in the plan were made subsequently as a result of ongoing discussion:

"On August 11 and August 15, 1975, the Department held separate meet-and-confer sessions with SARPA, CLEATE, PEGG and CSEA. The meetings were devoted to an explanation and discussion of the size of the Department's proposed personnel reduction, the Department's layoff timetable and the identify [*sic*] of the classes to be affected by the layoff."

■ The obligation to "meet and confer" includes the implied element of "good faith." (*Lipow* v. *Regents of University of California* (1975) 54 Cal.App.3d 215, 219 [126 Cal.Rptr. 515].) As noted in that case: "The question of good or bad faith on the part of the union or employer is primarily a factual one. (*N. L. R. B.* v. *Reisman Bros., Inc.* (2d Cir. 1968) 401 F.2d 770, 771.) Resolution of the question of good faith necessarily involves consideration of all the facts of a particular case. (*N. L. R. B.* v. *Newberry Equipment Company* (8th Cir. 1968) 401 F.2d 604, 606.) In the instant case the court found that respondent at all times met and conferred in good faith. Where there is substantial evidence to support a finding of the trial court, the appellate court will uphold the trial court's finding. (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 . . . .) [¶] 'Whether a party is chargeable with an overall failure to bargain in good faith "involves a finding of motive or state of mind," which must be inferred from the evidence viewed as a whole.' (*N. L. R. B.* v. *Columbia Tribune Publishing Company* (8th Cir. 1974) 495 F.2d 1384, 1391.) [¶] . . . In *N. L. R. B.* v. *Alva Allen Industries, Inc.* (8th Cir. 1966) 369 F.2d 310, 321, the court stated, 'The negotiations of the Company must be measured in the light of surrounding circumstances, which include corresponding attempts at good faith negotiation by the Union.' Both Government Code section 3505 and Education Code section 13081, subdivision (d), speak in terms of the '*mutual* obligation' to meet and confer in order 'to exchange freely information, opinions, and proposals.' " (54 Cal.App.3d at pp. 227-228.)

■ The fact that the department when it commenced discussions had already concluded that some reduction in staff was inevitable does not constitute bad faith, per se, as argued by appellants. As stated in *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 621-622 [116 Cal.Rptr. 507, 526 P.2d 971]:

"Finally, the union advanced a Personnel Reduction proposal which would require that the city bargain with the union with respect to any decision to reduce the number of fire fighters. Under the proposal, any reduction would be on a least-seniority basis, and no new employees could be hired until all those laid off were given an opportunity to return. The city objects to that part of the proposal requiring bargaining on a decision to reduce personnel and contends that any such matter is not negotiable because it involves the merits, necessity or organization of the fire fighting service.

"A reduction of the entire fire fighting force based on the city's decision that as a matter of policy of fire prevention the force was too large would not be arbitrable in that it is an issue involving the organization of the service.

"*Thus cases under the NLRA indicate that an employer has the right unilaterally to decide that a layoff is necessary, although it must bargain about such matters as the timing of layoffs and the number and identity of the employees affected. (N.L.R.B.* v. *United Nuclear Corporation* (10th Cir. 1967) 381 F.2d 972.) In some situations, such as that in which a layoff results from a decision to subcontract out bargaining unit work, the decision to subcontract and lay off employees is subject to bargaining. (*Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203 . . . .) The fact, however, that the decision to lay off results in termination of one or more individuals' employment is not *alone* sufficient to render the decision itself a subject of bargaining. (*N. L. R. B.* v. *Dixie Ohio Express Co.* (6th Cir. 1969) 409 F.2d 10.)

"On the other hand, because of the nature of fire fighting, a reduction of personnel may affect the fire fighters' working conditions by increasing their workload and endangering their safety in the same way that general manning provisions affect workload and safety. To the extent, therefore, that the decision to lay off some employees affects the workload and safety of the remaining workers, it is subject to bargaining and arbitration for the same reasons indicated in the prior discussion of the manning proposal.

"Our conclusion that the issues of Personnel Reduction, Vacancies and Promotions, Schedule of Hours and Constant Manning Procedure, except as limited above, involve the wages, hours or working conditions of fire fighters and are negotiable requires in the context of this suit that the City

of Vallejo submit these issues to arbitration. We in no way evaluate the merit of the union proposals, but hold only that under the Vallejo charter they are arbitrable." (Italics added.)

■ While the collective bargaining rights of California public employees differ in some respects from those of private and federal employees, it is appropriate for us, as it was for the court in *Lipow,* to consult relevant federal authorities in determining what is meant by "to meet and confer in good faith." (*Lipow* v. *Regents of University of California, supra,* 54 Cal.App.3d 215.)

Having done so, we find that the federal cases have uniformly held that an employer faced with economic necessity has the right unilaterally to decide that some reduction in work forces must be made. (*N. L. R. B.* v. *United Nuclear Corporation* (10th Cir. 1967) 381 F.2d 972; *N. L. R. B.* v. *Dixie Ohio Express Co.* (6th Cir. 1969) 409 F.2d 10; and cf. *Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203 [13 L.Ed.2d 233, 85 S.Ct. 398, 6 A.L.R.3d 1130].) Nothing in this rule does violence to the purposes underlying the "meet and confer" provisions of the Government Code. These sections were intended to strengthen employer-employee relations, and to promote the just resolution of disputes between employer and employee by requiring full discussion and disclosure. ■ Here the financial necessity of making some layoffs was manifest but the actual plan implementing the department's decision was the result of serious productive "meet and confer" discussions.

We accordingly find that the trial court's findings were supported by substantial evidence and that its judgment should be affirmed.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied August 17, 1978, and appellants' petition for a hearing by the Supreme Court was denied September 20, 1978. Bird, C. J., did not participate therein.