[S.F. No. 24915. Apr. 3, 1986.]

BUILDING MATERIAL & CONSTRUCTION TEAMSTERS' UNION, LOCAL 216, Plaintiff and Appellant, v.
JOHN C. FARRELL, as Controller, etc., et al., Defendants and Respondents.

**COUNSEL**

Davis & Reno, Duane W. Reno and Vincent J. Courtney, Jr., for Plaintiff and Appellant.

George Agnost, City Attorney, and Stephanie M. Chang, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**MOSK, J.**—We must determine whether the Meyers-Milias-Brown Act (MMBA)[1] requires local public agencies to "meet and confer" with representatives of a recognized employee bargaining unit before eliminating employment positions in that bargaining unit and reassigning the duties of those positions to employees outside the unit.

The relevant facts are not in dispute. One vacant, full-time position and one filled, part-time position in class 7355, "Truck Driver," were deleted from the Laguna Honda Hospital budget for fiscal year 1980-1981 by the Department of Public Health of the City and County of San Francisco (DPH). At the same time, three new full-time positions in class 7524, "Institutional Utility Worker," were added to the Laguna Honda budget. The duties of the eliminated truck driver positions were to be performed by the new utility workers. The truck drivers were in plaintiff union's bargaining unit, but the utility workers were not.

---

[1] Government Code sections 3500-3510. All statutory references are to the Government Code.

Antone Metaxas held the part-time truck driver position that was eliminated from the DPH budget. He was transferred to a full-time truck driver position at San Francisco General Hospital, but did not want that job because it would have forced him to give up lucrative part-time work as a longshoreman. He applied for and was granted a series of personal leaves from the new position. He did not report for work when his period of approved absence ended, and pursuant to civil service rules he was deemed to have resigned his position at San Francisco General as of December 15, 1982. He did not appeal this automatic resignation, lost his status as a truck driver on December 31, 1982, and was barred from future employment with the DPH.

Plaintiff was first notified of the disputed actions on September 8, 1980, after the DPH had deleted the one and one-half truck driver positions from its budget and had received approval from the mayor and the board of supervisors to create additional positions outside appellant's bargaining unit. September 8 was the same day the San Francisco Civil Service Commission approved the actions taken by the DPH.

On September 11, 1980, plaintiff filed a grievance on behalf of Metaxas, alleging that the DPH had improperly denied him the opportunity to retain his part-time position at Laguna Honda. The DPH refused to rehire Metaxas.

In the following months, plaintiff made requests of the DPH and the Civil Service Commission of the City and County of San Francisco to meet and confer about the elimination of the bargaining unit positions, the transfer of Metaxas, and the reassignment of truck driver duties to institutional utility workers who were outside the unit. The requests were denied on the ground these matters were not within the "meet and confer" obligations imposed on local agencies by the MMBA.

On April 13, 1983, plaintiff filed this action for a writ of mandate to compel defendants to restore the eliminated positions at Laguna Honda and to reinstate Metaxas in his former position with backpay. The court denied relief on the grounds that the MMBA's meet and confer requirements were not applicable to this type of employee reorganization and that the action was untimely. The Court of Appeal affirmed, basing its holding on the asserted inapplicability of the MMBA; it did not reach the issue whether the action was timely.

Plaintiff contends the MMBA required defendants to give prior notice of, and meet and confer about, three related actions: (1) the elimination of the

truck driver positions at Laguna Honda; (2) the reassignment of truck driver duties to institutional utility workers, who were outside appellant's bargaining unit; and (3) the transfer of Metaxas to a full-time job at San Francisco General. Plaintiff argues that these actions were taken unilaterally and were therefore in violation of the MMBA.

Defendants contend these actions were not within the scope of the MMBA and could be ordered without giving notice to or conferring with the union. Defendants also argue that a provision of the San Francisco Charter granting to the civil service commission the right to reclassify employment positions is incompatible with and supersedes any provisions of the MMBA that require bargaining with employee representatives about these types of actions. Finally, defendant claims that plaintiff waived any bargaining rights it had concerning job reclassifications by private agreement.

We hold the notice and meet and confer requirements of the MMBA are applicable in this case, are not incompatible with provisions of San Francisco Charter, and were not waived by plaintiff.

I.

The MMBA has two stated purposes: (1) to promote full communication between public employers and employees, and (2) to improve personnel management and employer-employee relations. (§ 3500.) To effect these goals the act gives local government employees the right to organize collectively and to be represented by employee organizations (§ 3502), and obligates employers to bargain with employee representatives about matters that fall within the "scope of representation" (§§ 3504.5, 3505).

Specifically, section 3504.5 provides that public agencies must give employee organizations "reasonable written notice" of any proposed "ordinance, rule, resolution, or regulation directly relating to matters within the scope of representation"; section 3505 provides that representatives of public agencies and employee organizations "shall have the mutual obligation personally to *meet and confer* promptly upon request by either party . . . and to endeavor to reach agreement on matters within the *scope of representation* prior to the adoption by the public agency of its final budget for the ensuing year." (Italics added.)

It is clear that plaintiff was not given "reasonable written notice" prior to the employee reorganization at Laguna Honda Hospital, and defendants do not contend otherwise. Plaintiff's requests to "meet and confer" about the reorganization after it had been completed were also denied. ▮ The

issue is therefore whether the reorganization was within the "scope of representation."

The recurrent phrase, "scope of representation," is defined in section 3504 to include "all matters relating to employment conditions and employer-employee relations, including, but not limited to, *wages, hours, and other terms and conditions of employment,* except, however, that the scope of representation shall not include consideration of the *merits, necessity, or organization of any service* or activity provided by law or executive order." (Italics added.)

■ In construing the arguably vague, overlapping provisions of section 3504, we consider federal as well as California precedents. (*Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616 [116 Cal.Rptr. 507, 526 P.2d 971].) Federal decisions have frequently guided our interpretation of state labor provisions the language of which parallels that of federal statutes. (*Ibid; Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453].) Here, the phrase "wages, hours, and other terms and conditions of employment" was taken directly from the National Labor Relations Act (NLRA) (29 U.S.C. § 158(d)). (*Fire Fighters Union* v. *City of Vallejo, supra,* at pp. 615-616.) Although the NLRA does not contain wording similar to the second key phrase in section 3504—which excepts the "merits, necessity, or organization" of government services from the scope of representation— this phrase was added by the Legislature to incorporate the limitations on the scope of mandatory bargaining that had been developed by the federal courts in their interpretations of the NLRA. (*Fire Fighters Union* v. *City of Vallejo, supra,* at p. 616.) Thus, because the federal precedents reflect the same interests as those underlying section 3504, they furnish reliable authority in construing that section. (*Fire Fighters Union* v. *City of Vallejo, supra,* at pp. 616-617; *San Jose Peace Officer's Assn.* v. *City of San Jose* (1978) 78 Cal.App.3d 935, 943 [144 Cal.Rptr. 634].)[2]

---

[2]We have also noted, however, that by adding the words "including but not limited to" before the phrase "wages, hours, and other terms and conditions of employment," the Legislature may have broadened the scope of representation under the MMBA beyond that of the federal statute. (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept., supra,* 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453]; see Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 749.) Thus, while federal precedents provide reliable authority in interpreting the scope of section 3504, "they do not necessarily establish the limits of California public employees' representational rights." (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept., supra,* at p. 391; *Solano County Employees' Assn.* v. *County of Solano* (1982) 136 Cal.App.3d 256, 259-260 [186 Cal.Rptr. 147]; see *Independent Union of Public Service Employees* v. *County of Sacramento* (1983) 147 Cal.App.3d 482, 488 [195 Cal.Rptr.

■ For an action by an employer to fall within the scope of representation, and thus be subject to the mandatory bargaining requirements of the MMBA, it must have a *significant* effect on the "wages, hours, and other terms and conditions of employment" of the bargaining-unit employees. (*Westinghouse Electric Corporation* v. *N.L.R.B.* (4th Cir. 1967) 387 F.2d 542, 548; see *Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203, 223 [13 L.Ed.2d 233, 245-246, 85 S.Ct. 398] (conc. opn. of Stewart, J.).) ■ It is clear that the permanent transfer of work away from a bargaining unit often has a significant effect on the wages, hours, and working conditions of bargaining-unit employees. (See, e.g., *Fibreboard Corp.* v. *Labor Board, supra,* at pp. 209-211 [13 L.Ed.2d at pp. 237-239]; *Road Sprinkler Fitters Local U., etc.* v. *N.L.R.B.* (D.C.Cir. 1982) 676 F.2d 826, 833-834; *Dublin Professional Fire Fighters, Local 1885* v. *Valley Community Services Dist.* (1975) 45 Cal.App.3d 116, 119 [119 Cal.Rptr. 182].) Courts have found violations of the duty to bargain, for example, when an employer has transferred bargaining-unit work to an independent contractor (*e.g., Fibreboard Corp.* v. *Labor Board, supra,* at p. 209 [13 L.Ed.2d at pp. 237-238]; *Amcar Division, ACF Industries, Inc.* v. *N.L.R.B.* (8th Cir. 1979) 592 F.2d 422, 428; *International Union, U.A., A. & A. Imp. Wkrs.* v. *N.L.R.B.* (D.C.Cir. 1967) 381 F.2d 265, 266, cert. den., 389 U.S. 857 [19 L.Ed.2d 122, 88 S.Ct. 82]) or to established or newly hired employees outside the bargaining unit (see, e.g., *Soule Glass and Glazing Co.* v. *N.L.R.B.* (1st Cir. 1981) 652 F.2d 1055, 1088; *Office and Professional Emp. Int. U., Local 425* v. *N.L.R.B.* (D.C.Cir. 1969) 419 F.2d 314, 316).[3]

The employer is required to bargain, however, only if the work transfer adversely affects the bargaining unit in question. (*Road Sprinkler Fitters Local U., etc.* v. *N.L.R.B., supra,* 676 F.2d at p. 831; see *Office and Professional Emp. Int. U., Local 425* v. *N.L.R.B., supra,* 419 F.2d at p. 321; *International Union, U.A., A. & A. Imp. Wkrs.* v. *N.L.R.B., supra,* 381 F.2d at p. 266.) It is clear that a bargaining unit is adversely affected when a work transfer results in layoffs or the failure to rehire bargaining-unit workers who would otherwise have been rehired. (See *Fibreboard Corp.* v. *Labor Board, supra,* 379 U.S. at p. 207 [13 L.Ed.2d at pp. 236-237]; *Amcar Division, ACF Industries, Inc.* v. *N.L.R.B., supra,* 592 F.2d at p. 428.) Adverse effects, however, have also been found when bargain-

206].) Because the work transfer complained of in this case falls clearly within the scope of mandatory bargaining under the NLRA, we do not consider here whether the state provision extends public employees' representational rights beyond the rights of employees governed by the NLRA.

[3]When work transfers are found to be within the scope of representation, the employer "must bargain with respect to the *decision* to remove work from the bargaining unit employees, not merely its effects on the employees." (*Soule Glass and Glazing Co.* v. *N.L.R.B., supra,* 652 F.2d at p. 1088.)

ing-unit employees have lost the opportunity to perform overtime or other types of highly paid work (e.g., *Office and Professional Emp. Int. U., Local 425* v. *N.L.R.B., supra,* at p. 31; *Dublin Professional Fire Fighters, Local 1885* v. *Valley Community Services Dist., supra,* at p. 119) or even when the laid-off employees have been rehired at similar jobs but the bargaining unit itself was reduced in size (e.g., *International Union, U.A., A. & A. Imp. Wkrs.* v. *N.L.R.B., supra,* 381 F.2d at p. 266).

■ Even when the action of an employer has a significant and adverse effect on the wages, hours, or working conditions of the bargaining-unit employees, the employer may yet be excepted from the duty to bargain under the "merits, necessity, or organization" language of section 3504. If an action is taken pursuant to a fundamental managerial or policy decision, it is within the scope of representation only if the employer's need for unencumbered decisionmaking in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about the action in question. (*First National Maintenance Corp.* v. *NLRB* (1980) 452 U.S. 666, 686 [69 L.Ed.2d 318, 335-336, 101 S.Ct. 2573]; see *Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 937 [143 Cal.Rptr. 255].)

In the leading case of *Fibreboard Corp.* v. *Labor Board, supra,* 379 U.S. 203, a factory employer unilaterally contracted out maintenance work that had previously been performed by union employees. This action resulted in laying off the former maintenance workers. The court held that "the replacement of employees in the existing bargaining unit with those of an independent contractor to do the same work under similar conditions of employment" was a statutory subject of collective bargaining. (*Id.* at p. 215 [13 L.Ed.2d at p. 241].)

■ In the case at bar, defendants similarly terminated employment positions and reassigned work outside the bargaining unit. The new utility workers were apparently hired to undertake the same work as plaintiff's workers had previously done, and to perform that work under similar conditions. Defendants contend that *Fibreboard* and other similar cases cited by plaintiff, are "obviously distinguishable" because they "involved wholesale subcontracting out of services formerly performed by employees." We believe, however, that *Fibreboard* cannot be so easily dismissed. As noted above, the principal purposes of the MMBA's mandatory bargaining requirements are to promote communication between public employers and employees and to improve personnel management. (§ 3500.) Defendants give no reasons why these purposes are not served here as well as in cases involving "wholesale subcontracting." They also ignore the fact that the holding in *Fibreboard* has been extended to include situations that do not

involve "wholesale subcontracting." (See, e.g., *Soule Glass and Glazing Co.* v. *N.L.R.B., supra,* 652 F.2d 1055; *Office and Professional Emp. Int. U., Local 425* v. *N.L.R.B., supra,* 419 F.2d 314.)

Thus, in *Soule Glass and Glazing Co.* v. *N.L.R.B., supra,* 652 F.2d at pages 1088-1089, the court relied on *Fibreboard* in holding that an employer improperly failed to bargain before transferring bargaining-unit work to nonbargaining unit employees. The employer unilaterally hired new employees to take over a portion of the glass replacement work previously performed entirely by employees in the bargaining unit. As opposed to *Fibreboard,* in which all the maintenance work was taken from the bargaining unit in a "wholesale" fashion, only a portion of the work was taken away from the unit in *Soule Glass.* Additionally, as in the case at bar, the work was transferred to newly hired employees and no subcontracting was involved.

It is also significant that the holding in *Soule Glass* was not dependent on a finding of antiunion animus on the part of the employer, or a decline in the number of bargaining-unit jobs as a result of the work transfer. The court specifically found that the employer had not displayed antiunion animus (*id.* at pp. 1103-1104), and that there was no ultimate decline in the bargaining unit workforce (*id.* at p. 1089). A diminution of bargaining-unit positions, as in the present case, is a more compelling reason for requiring the employer to meet and confer before arranging to transfer work away from the bargaining unit.

California cases have also recognized that the transfer of bargaining-unit work to nonbargaining-unit employees is a proper subject for negotiation. (See *Dublin Professional Fire Fighters, Local 1885* v. *Valley Community Services Dist.* (1975) 45 Cal.App.3d 116, 119 [119 Cal.Rptr. 182]; cf. *Nish Noroian Farms* v. *Agricultural Labor Relations Bd.* (1984) 35 Cal.3d 726, 738-739 [201 Cal.Rptr. 1, 677 P.2d 1170].) In *Dublin Professional Fire Fighters, Local 1885* v. *Valley Community Services Dist., supra,* at page 119, a public employer unilaterally adopted a new policy requiring the use of temporary employees for overtime work, effectively depriving the regular employees of their customary priority in seeking such work. Because the workload and compensation of the regular employees were affected, the court held that section 3505 required the community service district to meet and confer with employee representatives before the new policy could be implemented. (*Ibid.*)

Defendants seek to distinguish *Dublin* by claiming that plaintiff has not alleged or proven that the decisions herein had any effect on matters within

the scope of representation. The facts are otherwise. First, Metaxas, a member of plaintiff's bargaining unit, lost his part-time job because of defendants' decision to reassign bargaining unit work outside the unit. The fact that he was offered a full-time position elsewhere does not mean he was not significantly affected. The job offered was at a different location, involved different work hours, and would have required him to quit a lucrative part-time position, thereby reducing his overall weekly earnings. Second, the actions also had an effect on the bargaining unit itself, because one and one-half bargaining-unit positions were eliminated from the Laguna Honda budget.

The cases have established that the bargaining unit can be adversely affected without any immediate adverse effect on any particular employee within that unit. In *International Union, U.A., A. & A. Imp. Wkrs.* v. *N.L.R.B., supra,* 381 F.2d 265, 266, an employer eliminated six automobile driver positions by subcontracting out for those services. Although each employee was given a similar job in the same plant, "the change had an adverse impact on the bargaining unit since it diminished by six the whole number of jobs performed by its members." (*Ibid.*)

Similarly, in *Office and Professional Emp. Int. U., Local 425* v. *N.L.R.B., supra,* 419 F.2d 314, 321, a group of office workers were periodically assigned auditing work, which was more highly paid than their regular duties. The employer unilaterally created two positions for full-time auditors that were not to be included in the office workers' bargaining unit. Although these two positions were filled by volunteers from the ranks of the office workers and no layoffs resulted from this action, the court found that the union had suffered an adverse impact from the job reclassification. The court explained, "The Union lost an element of work carrying higher pay and opportunity for experience and advancement; and it received no guarantee that future auditors would be taken from the unit." (*Ibid.*)

Here, defendants' actions adversely affected an individual employee and the bargaining unit as a whole. Under these circumstances it is clear that defendants' actions constituted more than a de minimis violation of their duty to bargain under the MMBA.[4]

Defendants next argue that even if their actions had an adverse effect on the bargaining unit, the decision to transfer the work outside the unit fell

---

[4]As there was an adverse effect on one of the employees as well as on the bargaining unit as a whole, we need not consider whether such an effect on the unit alone would be significant enough to constitute a violation of the MMBA.

within the "fundamental managerial policy" exception to the MMBA. Federal and California decisions both recognize the right of employers to make unconstrained decisions when fundamental management or policy choices are involved. In his concurrence in *Fibreboard,* Justice Stewart declared that management decisions that "lie at the core of entrepreneurial control" or are "fundamental to the basic direction of a corporate enterprise" should be excluded from the mandatory bargaining requirements of the NLRA. (*Fibreboard Corp.* v. *Labor Board, supra,* 379 U.S. at p. 223 [13 L.Ed.2d at p. 246] (conc. opn. of Stewart, J.).) Thus federal cases have held an employer need not bargain about a decision to shut down a plant for economic reasons (*N.L.R.B.* v. *Royal Plating & Polishing Co.* (3d Cir. 1965) 350 F.2d 191), nor about a decision to cancel a contract with a customer, even though layoffs result from such cancellation (*First National Maintenance Corp.* v. *NLRB* (1981) 452 U.S. 666, 686 [69 L.Ed.2d 318, 335-336, 101 S.Ct. 2573]). When an employer makes a fundamental management decision that significantly affects the wages, hours, or working conditions of its employees, a balancing test applies: the employer's need for unfettered authority in making decisions that strongly affect a firm's profitability is weighed against the benefits to employer-employee relations of bargaining about such decisions. (*Ibid.*)

This court has noted that the phrase in section 3504 excepting the "merits, necessity, or organization" of government services from the scope of representation was intended to incorporate this "general managerial policy" exception from the federal cases into the MMBA. (*Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d 608, 616.) Thus, in *State Assn. of Real Property Agents* v. *State Personnel Bd.* (1978) 83 Cal.App.3d 206 [147 Cal.Rptr. 786], the court held there was no violation of meet and confer requirements when an employer unilaterally decided that layoffs would be necessary because of budget reductions and meet and confer discussions with employees were only held regarding the method of implementing the layoffs.

Respondents draw an analogy to the cases allowing fundamental management decisions to be made unilaterally even when layoffs result from such decisions. Decisions to close a plant or to reduce the size of an entire workforce, however, are of a different order from a plan to transfer work duties between various employees. The former directly affect the amount of work that can be accomplished or the nature and extent of the services that can be provided, and are therefore "fundamental management" decisions. The decision to transfer bargaining-unit work to nonunit employees in this case had no effect on the services provided by the hospital, but directly affected

the wages, hours, and working conditions of the hospital employees. Thus, the work transfer was a suitable subject for collective bargaining.

Defendants also claim that their action was a fundamental policy decision that is exempt from the bargaining requirements of the MMBA. They rely primarily on *Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931 [143 Cal.Rptr. 255], and *San Jose Peace Officer's Assn.* v. *City of San Jose* (1978) 78 Cal.App.3d 935 [144 Cal.Rptr. 638]. In *Berkeley,* the city unilaterally allowed a member of the citizen's police review commission to attend police department hearings regarding citizen complaints against police and to send a member of the department to review commission meetings. The court held that this type of important policy decision could be made without conferring with the representative of the police officers. (*Berkeley Police Assn.* v. *City of Berkeley, supra,* at p. 937.) Similarly, in *San Jose,* the court approved the city's unilateral change of policy concerning the use of deadly force by its police; the new policy limited the use of such force to situations in which a life was at stake. The court considered the change to be a fundamental policy decision excepted from mandatory bargaining. (*San Jose Police Officer's Assn.* v. *City of San Jose, supra,* at pp. 948-949.)

Defendants claim their action was also a "fundamental policy decision" because it involved the economical and efficient operation of local government. Again such cases as *Berkeley* and *San Jose* are distinguishable. Decisions involving the betterment of police-community relations and the avoidance of unnecessary deadly force are of obvious importance, and directly affect the quality and nature of public services. The burden of requiring an employer to confer about such fundamental decisions clearly outweighs the benefits to employer-employee relations that bargaining would provide.

By contrast, defendants' decision to reorganize certain work duties was hardly "fundamental." It had little, if any, effect on public services. Rather, it primarily impacted the wages, hours, and working conditions of the employees in question and thus was a proper subject for mandatory collective bargaining. Indeed, defendants' claim to the contrary is in conflict with the statutory framework of the MMBA: any issue involving wages, for example, would affect the cost of government services, but such matters are specifically included in the scope of representation as defined in section 3504.

## II.

Next, defendants contend certain provisions of the San Francisco Charter are incompatible with the meet and confer requirements of sections

3504.5 and 3505. Section 3.661, subdivision (a), of the San Francisco Charter provides that "The [civil service] commission shall classify, and from time to time may reclassify, in accordance with the duties and responsibilities of the employment, and training and experience required, all places of employment in the departments and offices of the city and county . . . . [¶] The commission shall also, in accordance with duties and responsibilities, allocate, and from time to time may reallocate, the positions to the various classes of the classification." Defendants also note that while the San Francisco Administrative Code has a meet and confer provision that is similar to section 3505 of the MMBA, it specifically states that it does not supersede the provisions of the charter. (San Francisco Admin. Code, § 16.215, subd. (a).)

■   It is well settled that statutes should be construed in harmony with other statutes on the same general subject. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 307 [162 Cal.Rptr. 30, 605 P.2d 859]; *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) This rule applies even when interpreting provisions in different codes. (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749], overruled on other grounds by *Frink* v. *Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476]; *Fishman* v. *Fishman* (1981) 117 Cal.App.3d 815, 821 [173 Cal.Rptr. 59].)   ■   It is also settled that when the terms of a statute or charter may reasonably be construed to avoid conflict with a constitutional provision, they will be so read. (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669], cert. den., 401 U.S. 1012 [28 L.Ed.2d 549, 91 S.Ct. 1266]; *Lubey* v. *City and County of San Francisco* (1979) 98 Cal.App.3d 340, 347-348 [159 Cal.Rptr. 440].) The same rule of construction applies to a potential conflict between a statute and charter provision.

■   The relevant section of the San Francisco Charter clearly gives the civil service commission the authority to "reclassify" and "reallocate" employment positions in city government. It is far from clear, however, that this power conflicts with the meet and confer provisions of the MMBA. First, although the MMBA mandates bargaining about certain matters, public agencies retain the ultimate power to refuse to agree on any particular issue. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 334-336 [124 Cal.Rptr. 513, 540 P.2d 609], cert. den., 424 U.S. 943 [47 L.Ed.2d 349, 96 S.Ct. 1411].) Thus the power to reclassify employment positions is not necessarily inconsistent with the requirement to meet with employee representatives and confer about reclassifications before the changes are implemented. Second, there is no language in the charter that specifically exempts the civil service commission from having

to meet and confer before reclassifying positions. Indeed, the wording of the charter that the commission *"may* reclassify . . . all places of employment" (italics added) is permissive, and gives no clear instruction that reclassification decisions must rest solely with the commission. Finally, the language of the charter is somewhat ambiguous in that it is not completely clear the power to reclassify or reallocate employment positions necessarily encompasses the power to divert specific duties from one employment classification to another, let alone that that power must be exclusive.

We also note that when the meet and confer requirements of the MMBA have previously been challenged on the ground that they conflict with other legal or contractual provisions, courts have generally found no such antagonism. In *People* ex rel. *Seal Beach Police Officers Assn.* v. *City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145], the city claimed the MMBA's meet and confer requirements were incompatible with its constitutional right to propose charter amendments; the amendments related to the discipline of city employees, and thus were matters within the scope of representation as defined in section 3504. We held that although the California Constitution (art. XI, § 3, subd. (b)) clearly gives cities the right to propose charter amendments, this right is compatible with the mandate to meet and confer before proposing amendments concerning the terms and conditions of public employment. (*People* ex rel. *Seal Beach Police Officers Assn.* v. *City of Seal Beach, supra,* at p. 601.)

Similarly, in *Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55 [151 Cal.Rptr. 547, 588 P.2d 249], we decided that the MMBA's meet and confer requirements were not inconsistent with a county charter provision requiring the county civil service commission to hold public hearings before amending its layoff rules. Rather, the commission was required to hold public meetings and engage in meet and confer negotiations with employment representatives before it could amend such rules. (*Id.* at pp. 65-66.)

The cases that are most directly in point, however, are divided on the extent to which the meet and confer provisions of the MMBA are compatible with the powers of government agencies to take actions that directly affect the hours, wages, or other working conditions of their employees. In *Independent Union of Pub. Service Employees* v. *County of Sacramento* (1983) 147 Cal.App.3d 482 [191 Cal.Rptr. 206], the court interpreted an agreement between the county and the union that provided the county "the exclusive right to . . . assign its employees . . . ." When the county unilaterally assigned custodial employees to a different shift, the employees' representative demanded that the county meet and confer about the shift

change. The county claimed that its exclusive right to assign employees made meeting and conferring unnecessary. The court stated: "The power to 'assign' employees is not inconsistent with the meet and confer requirement. As long as the County meets and confers in good faith, it may assign its employees however it sees fit." (*Id.* at p. 487.)

By contrast, in *American Federation of State etc. Employees* v. *County of Los Angeles* (1975) 49 Cal.App.3d 356 [122 Cal.Rptr. 591], the court found that provisions of the county charter were incompatible with the meet and confer requirements of the MMBA. The charter provided that the civil service commission shall prescribe rules for "the classification of all positions in the classified service . . . ." While we need not decide whether the court was correct in holding that the particular charter provision and employee relations ordinance were in conflict with the MMBA, we note that the majority of cases display a preference for construing local laws to be adaptable to the meet and confer requirements of the MMBA when a reasonable reading of such laws would allow it.

Considering the general rules of statutory construction, the specific wording of the charter provision in this case, and the weight of authority concerning the compatibility of the meet and confer requirements of the MMBA with local laws and agreements, we conclude that the San Francisco Charter does not conflict with those requirements.

### III.

Finally, defendants contend plaintiff waived any rights it may have had to bargain over the reorganization of employment positions. They claim the waiver results from language in a memorandum of understanding (MOU) between the city and the union. This agreement recognizes plaintiff as the employee representative for class 7355 truck drivers, but also notes that such recognition was "for informational purposes only" and should "not be interpreted to preclude the City from transferring a particular classification to a more appropriate unit, if circumstances so require."

"'Courts examine the defense of waiver carefully in order to ensure the protection of a party's rights, especially when these rights are statutorily based.'" (*Independent Union of Pub. Service Employees* v. *County of Sacramento, supra,* 147 Cal.App.3d 482, 488, quoting *Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1011 [175 Cal.Rptr. 105].) Federal courts use two basic tests when considering claims that a union has waived its right to bargain with an employer: some follow the rule that a waiver must be made in "clear and unmistaka-

ble" language (see, e.g., *Office and Professional Emp. Int. U., Local 425 v. N.L.R.B., supra,* 419 F.2d at p. 321; *International Union, U.A., A. & A. Imp. Wkrs.* v. *N.L.R.B., supra,* 381 F.2d at p. 267), and others look beyond the language of the contract and consider the "totality of the circumstances" to determine whether there was a waiver of rights (see, e.g., *Radioear Corporation* (1974) 214 NLRB 362). In California, the "clear and unmistakable" language test has been preferred in cases involving public employees. (See, e.g., *Independent Union of Pub. Service Employees* v. *County of Sacramento, supra,* 147 Cal.App.3d at p. 488; *Oakland Unified School Dist.* v. *Public Employment Relations Bd., supra,* 120 Cal.App.3d at p. 1011.)

Defendants cite no authority to support their claim that the language of the MOU constitutes a waiver in this case. The fact that the MOU does not preclude the city from transferring a particular job classification to a more appropriate bargaining unit does not authorize a city to transfer individual work duties outside the bargaining unit. Even if the MOU provided that individual work transfers were also not precluded, this does not necessarily imply that such transfers may be made without complying with the meet and confer requirements of the MMBA. Clearly, this agreement does not provide a waiver of bargaining rights on the transfer of work duties in "clear and unmistakable" language, and defendants have failed to point out any other circumstances that would support their waiver theory under the "totality of the circumstances" test.

In summary, we hold that defendants' unilateral decision to eliminate bargaining-unit positions and reassign bargaining-unit work to nonunit employees, without giving prior notice to or meeting and conferring with the unit representative, violated sections 3504.5 and 3505. We further hold that the relevant provisions of the San Francisco Charter are compatible with the meet and confer requirements of the MMBA, and that the plaintiff did not waive its statutory rights in the MOU.

The judgment of the Court of Appeal is reversed. The Court of Appeal is directed to determine whether the action was timely brought, and if so, to issue a writ of mandate as prayed.

Bird, C. J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

LUCAS, J.—I respectfully dissent. The majority hold that the Meyers-Milias-Brown Act (MMBA) requires local public agencies to "meet and confer" with representatives of the recognized employee bargaining unit before eliminating employment positions in that unit and reassigning the duties of

those positions to employees outside the unit. In my view, the MMBA is inapplicable to such managerial decisions, and I fear that imposing the act's requirements in such situations will unduly burden the day-to-day operation of state and local governmental entities.

The correct analysis was set forth in the opinion of Presiding Justice Clinton White for the Court of Appeal, First Appellate District, in this case, and I adopt the following relevant portions of that opinion as my dissent:

"The [MMBA] (Gov. Code, §§ 3500-3510) provides local government employees the right to organize collectively and be represented by an employee union on 'all matters of employer-employee relations' with public agencies. ([*Id.*], § 3502.) This right to representation 'encompasses "but [is] not limited to wages, hours, and other terms and conditions of employment" ([*id.*], § 3504).' (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 388 [113 Cal.Rptr. 461, 521 P.2d 453].)

"Government Code section 3504.5 provides in part: 'Except in cases of emergency as provided in this section, the governing body of a public agency, and boards and commissions designated by law or by such governing body, *shall give reasonable written notice* to each recognized employee organization affected of any ordinance, rule, resolution, or regulation *directly relating to matters within the scope of representation* proposed to be adopted by the governing body or such boards and commissions and shall give such recognized employee organization the opportunity to meet with the governing body or such boards and commissions.' (Italics added.) Government Code section 3505 provides in part: 'The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, *shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment* with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action.' (Italics added.)

"Appellant contends that the department of public health's reorganization and reclassification of the class 7355 truck driver positions at Laguna Honda Hospital is a 'matter within the scope of representation' of the MMBA, when the duties formerly performed by employees within the bargaining unit are still performed, but by nonbargaining unit employees. Thus, appellant contends that pursuant to Government Code section 3504.5 and sec-

tion 3505, the city was obligated to notify appellant and to meet and confer with appellant prior to deleting the truck driver positions from the 1980-1981 budget and prior to reorganizing and reclassifying the duties of those positions to institutional utility worker, class 7524.

"Section 3504 defines the scope of representation under the MMBA as follows: 'The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that *the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity* provided by law or executive order.' (Italics added.)

"Respondents argue that the budget deletion and reclassification actions at issue relate to the 'merits, necessity, or organization' of the health 'service' provided by respondents at Laguna Honda Hospital. (Gov. Code, § 3504.) There was then no notification or meet and confer obligation on respondents' part as to appellant because respondents' actions were within the express 'management prerogatives' exception to coverage by the MMBA. (*Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616 [116 Cal.Rptr. 507, 526 P.2d 971].)

"The cases have consistently set a high standard in determining the existence of a 'managerial prerogative' under the MMBA. (*Solano County Employees' Assn.* v. *County of Solano* (1982) 136 Cal.App.3d 256, 263 [186 Cal.Rptr. 147].) [This court] has stated that to promote peaceful adjudication of disputes, '[w]e . . . must be careful not to restrict unduly the *scope* of the arbitration by an overbroad definition of "merits, necessity or organization." ' (*Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d at p. 615, italics in original.)

"The court in *San Jose Peace Officers Assn.* v. *City of San Jose* (1978) 78 Cal.App.3d 935, 948 [144 Cal.Rptr. 638], determined that the San Jose Police Department's decision concerning the correct use of force by its police officers was not a term or condition of employment, but a managerial policy decision within the 'exception delineated in Section 3504.' Thus, a change in the police department's regulations was not subject to the meet and confer requirement under the MMBA.

"The *San Jose* court correctly considered the decisions in *Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203, 223 [13 L.Ed.2d 233, 245, 85 S.Ct. 398, 6 A.L.R.3d 1130] (conc. opn. of Stewart, J.), and *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d at pages 616-617, 620-621,

which stated that decisions which are clearly within the realm of managerial discretion and which 'impinge only indirectly,' or do not 'primarily involve,' the terms or conditions of employment are not subject to meet and confer requirements. The court further noted that the court in *Westinghouse Electric Corporation* v. *N.L.R.B.* (4th Cir. 1967) 387 F.2d 542, 548, required that managerial decisions have a 'significant or material' relationship to working conditions in order to be subject to meet and confer requirements. The *San Jose* court stated at 78 Cal.App.3d 945: 'Requiring that the decision have a "significant or material" relationship to working conditions (*Westinghouse, supra*) is substantially the same as requiring that the decision "primarily" involve working conditions (*Fire Fighters, supra*). This is also consistent with Mr. Justice Stewart's opinion in *Fibreboard Corp., supra,* that decisions "which impinge only indirectly" upon a subject of bargaining are not the subject of collective bargaining.'

"The *San Jose* court also looked at whether the decision at issue was 'inextricably interwoven with important policy considerations,' to determine that the correct use of police force was a managerial decision not subject to meet and confer. (*San Jose Peace Officers Assn., supra,* 78 Cal.App.3d 935, 946.)

"Similarly, the court in *Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 937 [143 Cal.Rptr. 255], considered whether meeting and conferring on the issue in that case 'would place an intolerable burden upon fair and efficient administration of state and local government.' If so, '[s]uch decisions [could] not and should not be within the "scope of representation" by public employee associations.'

"Applying these tests to the instant case, . . . respondents made a managerial budgetary decision, within the section 3504 exception to coverage by the MMBA. Respondents made a 'primarily' economic policy decision to delete the one and one-half truck driver positions from the 1980-1981 budget, in order to promote more efficient administration at Laguna Honda Hospital. The effects of that managerial decision on the terms and working conditions of appellant and appellant's members were 'indirect.' The one worker affected by the deletion was offered a permanent, full-time position in his same job classification at San Francisco General Hospital. The decision was not within the scope of representation under the MMBA and so was not subject to notification and meet and confer requirements.

"[I also would hold that] respondents' actions of reorganization and reclassification of the duties formerly performed at Laguna Honda Hospital by class 7355 truck drivers to class 7524 institutional utility workers were

not subject to notification and meet and confer requirements under the MMBA.

"Government Code section 3500 provides in part: '. . . Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations nor is it intended that this chapter be binding upon those public agencies which provide procedures for the administration of employer-employee relations in accordance with the provisions of this chapter.'

"[I] agree with the trial court and respondents that the holding in *American Federation of State, etc. Employees* v. *County of Los Angeles* (1975) 49 Cal.App.3d 356 [122 Cal.Rptr. 591], is applicable to the instant case. In *American Federation,* the union sought a peremptory writ mandating the county to negotiate the reclassification of certain positions. The court held that under the Los Angeles County Charter and the local employee relations ordinance, the job reclassification was 'clearly excepted' from the meet and confer requirements set out in the MMBA and also set out in the local employee relations ordinance. (*American Federation, supra,* at p. 363.)

"The Los Angeles County employee relations ordinance at issue in *American Federation* is substantially similar to provisions adopted by the City and County of San Francisco. The San Francisco Employees' Relation Ordinance is codified at San Francisco Administrative Code section 16.200 et seq. Section 16.201 and section 16.215, subdivision (a), provide that nothing supersedes the San Francisco Charter, section 3.661, subdivision (a), authority of the civil service commission to reclassify positions. Likewise, the right and authority of the civil service commission to reclassify positions is *specifically reserved* at section 16.206. Under the holding in *American Federation of State, etc. Employees* v. *County of Los Angeles, supra,* 49 Cal.App.3d at page 360, the provisions of Administrative Code sections 16.201, 16.206 and 16.215, subdivision (a), and charter section 3.661, subdivision (a), reserve the subject of job classification determinations to the civil service commission, and there is no obligation to meet and confer on determinations to reorganize by reclassification of positions.

"Appellant argues that contentions analogous to those made in *American Federation* were made and rejected . . . in *People* ex rel. *Seal Beach Police Officers Assn.* v. *City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145]. However, [I] find that *Seal Beach* is distinguishable from the instant case.

"In *Seal Beach,* the court held that the city council was required to meet and confer with the public employee unions before it proposed charter amendments which affected matters within the employees' scope of representation. The MMBA required such action and the city council could not 'avoid the [MMBA] requirement by use of its [constitutional] right to propose charter amendments.' (*Seal Beach, supra,* at p. 602.)

"In the instant case, there is no issue as to any changes in existing rules. Rather, all the actions complained of were undertaken pursuant to existing law. [As indicated above,] respondents' actions were not within the scope of MMBA representation. Thus, the *Seal Beach* holding is inapplicable.

"Appellant argues further that the deletion of the positions and the reorganization are subject to meet and confer requirements because those actions resulted in the loss of one and one-half positions in the union's bargaining unit. [I] disagree with this contention.

" '[A] public agency must meet and consult with any recognized employee representative prior to adopting (or modifying) rules and regulations themselves, but it need not do so when determining whether an individual proposed bargaining unit is appropriate under rules previously adopted.' (*Service Employees Internat. Union* v. *City of Santa Barbara* (1981) 125 Cal.App.3d 459, 469 [178 Cal.Rptr. 89].) Under section 1 of the existing memorandum of understanding between the City and County of San Francisco and appellant, for fiscal year 1980-1981, the city was specifically not precluded from transferring a particular classification to another 'more appropriate unit,' and there was no meet and confer requirement for such action.[1] [I] find that under those existing rules, the city was also not required to meet and confer with appellant before reorganizing and reclassifying one and one-half positions within a particular classification simply because such action affected the size of appellant's bargaining unit.

"[I] note that appellant also relies upon the holdings in *Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802 [165 Cal.Rptr. 908], and *Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55 [151 Cal.Rptr. 547, 588 P.2d 249]. As in the *Seal Beach* holding, both

---

"[1]Section 1 of the memorandum of understanding between and for the City and County of San Francisco and appellant, for fiscal year 1980-1981, provided: 'The City acknowledges that the Union has been certified by the Municipal Employee Relations Panel or the Civil Service Commission as the recognized employee representative, pursuant to the provisions as set forth in the City's Employee Relations Ordinance for the following classification: [¶] 7355 Truck Driver[.] [¶] This Section is included in this [memorandum] for informational purposes only and shall not be interpreted to preclude the City from transferring a particular classification to a more appropriate unit, if circumstances so require.' "

cases involved the issue of whether meet and confer was required prior to adopting amendments to existing rules. As noted earlier in this opinion, there is no issue in this case as to any changes in existing rules. Thus, both holdings can also be distinguished.

"[I therefore conclude] that respondents' decision to delete the one and one-half positions at Laguna Honda Hospital and the reorganization and reclassification of the positions were not within the scope of representation under the MMBA, and so were not subject to the notification and meet and confer requirements therein. (Gov. Code, §§ 3504.5, 3505.)"

I would affirm the judgment.

Capaccioli (Walter P.), J.,* concurred.

---

*Judge, San Mateo County Superior Court, assigned by the Chairperson of the Judicial Council.