Filed 6/21/13  Assn. of Orange County Deputy Sheriffs v. County of Orange CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASSOCIATION OF ORANGE COUNTY DEPUTY SHERIFFS,<br><br>  Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF ORANGE et al.,<br><br>  Defendants and Respondents;<br><br>ORANGE COUNTY EMPLOYEES ASSOCIATION,<br><br>  Intervener and Respondent. | G047102<br><br>(Super. Ct. No. 30-2010-00400085)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.  Motion to take additional evidence on appeal. Denied.

Law Offices of Charles Goldwasser, Charles A. Goldwasser, David C. Goldwasser, Theodore H. Dokko; The Krolikowski Law Firm and Adam J. Krolikowski for Plaintiff and Appellant.

Nicholas S. Chrisos, County Counsel, and Nicole M. Walsh, Deputy County Counsel, for Defendants and Respondents.

Silver, Hadden, Silver, Wexler & Levine and Richard Alan Levine for Intervener and Respondent.

\*　　　\*　　　\*

INTRODUCTION

In January 2010, for the purpose of cutting costs, the Orange County Sheriff's Department (the Department) employed a new classification of civilian employee (the CSA classification[1]) to do office work in the Orange County (the County) jail system. Before this new classification, such work had been exclusively performed by deputy sheriffs. The Association of Orange County Deputy Sheriffs (the Association) sued the County, the Department, and the County Sheriff Sandra Hutchens (collectively, defendants). The Association alleged defendants transferred duties performed by deputy sheriffs to CSA's (who were assigned to the bargaining unit of another union, the Orange County Employees Association (OCEA)), without having first complied with the meet-and-confer obligations required by the Association's applicable memorandum of understanding with the County and the Meyers-Milias-Brown Act (MMBA) (Gov. Code, § 3500 et seq.). (All further statutory references are to the Government Code unless otherwise specified.) OCEA filed a complaint in intervention, seeking, inter alia, a judicial declaration that the CSA classification was lawfully created and properly assigned to OCEA as its bargaining unit.

Following trial, the court found the creation of the CSA classification and assignment of that classification to OCEA were lawful, but the effects of the CSA

---

[1] The CSA classification was comprised of the positions of correctional services assistant and correctional services assistant trainee (collectively, CSA's).

classification on deputy sheriffs represented by the Association fell within the scope of representation, and were thus subject to the meet-and-confer requirements of the MMBA. The trial court found no violation of the applicable memorandum of understanding.

The trial court issued a writ of mandate commanding defendants and the Association to immediately meet and confer on the impacts of the CSA classification on deputy sheriffs represented by the Association. The court's statement of decision thoroughly explained its reasoning. The trial court also enjoined defendants from placing any CSA's into positions not already occupied by CSA's, pending the court's determination the parties satisfied the meet-and-confer requirements. The Association contends the trial court's order violated the contracts clause of the California Constitution and was otherwise inadequate.

We affirm. The Association has failed to provide relevant legal authority and analysis in support of its arguments and has failed to demonstrate how the trial court's order issuing a writ of mandate and providing injunctive relief in favor of the Association constituted error.

FACTUAL AND PROCEDURAL BACKGROUND

I.

THE ASSOCIATION'S AND OCEA'S RELATIONSHIPS TO DEFENDANTS

The Association is an employee organization within the meaning of the MMBA. It represents employees of the Department who hold nonmanagement positions, including employees in positions classified as deputy sheriff I and deputy sheriff II. As a recognized employee organization, the Association has the right to represent its members in their employment relations with the County and the Department. In October 2007, the County Board of Supervisors ratified a memorandum of understanding agreed to by the Association and the County. OCEA is also an employee organization recognized by the

3

County to represent several classifications of nonsworn county employees regarding wages, hours, and other terms and conditions of employment.

## II.

### THE DEVELOPMENT OF THE CSA CLASSIFICATION[2]

At the beginning of 2008, defendants and the Association began working together "to address the fiscal difficulties created by the evident economic crisis." Defendants began developing the idea of creating a new nonsworn classification of employee who would work in the County jail system; the Association became aware of defendants' efforts in February 2008. "During the development of the classification, the general working concept among [defendants] and [the Association] was that the new classification of employee would fill jobs in the Orange County jails that deputy sheriffs had done in the past when the job became available by way of attrition, retirement, or transfer of a deputy sheriff." The Department and the Association contemplated that the Association would represent employees belonging to the new classification.

After newspaper articles were published, reporting on the new classification, the Association sent two letters to then Acting Sheriff Jack Anderson, stating that defendants were required to meet and confer with the Association before the implementation of the new classification. Although the Association asserted the parties were required to meet and confer on this issue, the Association also asserted it would not agree to meet and confer until negotiations opened for the 2009-2012 memorandum of understanding (the MOU), pursuant to the so-called "zipper clause" in the then applicable memorandum of understanding.

---

[2] The quoted material in this section is taken from the trial court's statement of decision. None of the trial court's findings in the statement of decision is challenged by the Association in this appeal; the relevant facts and procedural history in this case are generally undisputed.

4

Defendants and the Association continued to discuss the new classification throughout 2008 and in early 2009. In July 2009, the County Board of Supervisors adopted the CSA classification. The board of supervisors directed the County's human resources department to make a recommendation regarding placement in the appropriate representation unit for the CSA classification, in accordance with the applicable employee relations resolution.

In August 2009, contract negotiations between defendants and the Association opened for the MOU. At that time, the Association proposed that the parties bargain the issue of representation of the CSA classification. The County refused to negotiate that issue, and it was later withdrawn from the negotiations by the Association.

III.

THE CSA CLASSIFICATION IS ASSIGNED TO OCEA AS ITS BARGAINING UNIT; THE ASSOCIATION DOES NOT CHALLENGE THAT ASSIGNMENT.

The County's human resources director, Carl Crown, recommended that the CSA classification be represented by OCEA, based on the criteria set forth in section 8 of the employee relations resolution. Crown's decision was supported by, inter alia, evidence that OCEA represented other nonsworn classifications of employees, which had similar salary scales and retirement benefits as the CSA classification. In October 2009, the County Board of Supervisors determined the CSA classification would be represented by OCEA.

The Association did not file a challenge to the assignment with the personnel director within 15 days, as required by section 8I of the employee relations resolution. Had such a challenge been filed, a hearing of the matter would have been conducted by the board of supervisors.

5

## IV.

### CSA's Are Placed in the County Jail System and the Association Files a Complaint and Request for a Preliminary Injunction Against Defendants; the Trial Court Issues Preliminary Injunction Against Defendants.

In January 2010, the first group of CSA's was assigned and placed in the County jail system. During a shift schedule change in the summer of 2010, one or more deputies at the Theo Lacy Facility were told that certain assignments in two modules, which had been traditionally assigned to deputy sheriffs, would be filled by CSA's, not deputy sheriffs.

In August 2010, the Association sued defendants (the action) by filing a verified complaint against them, asserting claims for breach of the MOU and violation of the MMBA. The Association sought injunctive relief preventing defendants "from changing the status quo prior to [defendants] complying with the meet and confer, bargaining and impasse procedures required" by the MOU and the MMBA. The complaint further prayed for the issuance of a peremptory writ of mandate commanding defendants to follow the requirements of the MOU and the MMBA, "concerning meet and confer, bargaining and impasse procedures on the issue of the CSA's impact on employment conditions and employer-employee relations."

A day after the complaint was filed, the Association applied ex parte for a temporary restraining order and an order to show cause regarding the issuance of a preliminary injunction to enjoin defendants from replacing the Association's members with CSA's, and thus maintain the status quo. In support of the Association's application, the Association's executive director, Mark Nichols, declared, inter alia, that the Association "has suffered immediate damage due to the supplanting of [the Association's] positions in the Orange County Jails, the permanent loss of bargaining unit

6

positions, and will continue to suffer loss of bargaining unit positions of Orange County Jail staffing according to [defendants]' own statements."

In August 2010, the trial court denied the Association's application for a temporary restraining order, but issued an order to show cause, which stated, in part: "[I]t appears to the satisfaction of the court that this is a proper case for granting an order to show cause for a preliminary injunction." In late September 2010, the trial court issued a preliminary injunction, stating, in part, that during the pendency of the action, defendants were enjoined from "[f]illing any Deputy Sheriff positions which existed in the Orange County jail system on July 30, 2010, with CSA employees other than had been in effect on July 30, 2010."

Defendants moved to dissolve the preliminary injunction on the ground the trial court failed to order an undertaking as required by Code of Civil Procedure section 529. Defendants requested that the trial court order an undertaking in the amount of $650,000. In support of defendants' motion, Captain Davis Nighswonger declared that as of October 14, 2010, 24 people were being trained in the CSA academy and were expected to graduate on November 2, 2010. Nighswonger stated that as part of their continued training, the CSA's receive six weeks of on-the-job training in jails with deputy sheriffs. At the end of this six-week period, the staffing plan called for the CSA's to occupy positions in the jails on their own. The differential in hourly rate of pay between a deputy sheriff I and a CSA is $12.49. Nighswonger declared it will cost an additional $23,980 per pay period if the sheriff cannot use the CSA's in their intended capacity. If the preliminary injunction remained in effect in mid-December when the CSA's would be ready to assume solo positions in the jails, Nighswonger stated the Department "will have to find other positions for them or potentially lay them off. Also, the positions that CSAs are intended to fill come mid-December will have to be filled by

7

Deputies instead. The cost impact on the budget as approved by the Board of Supervisors will be significant."

In mid-October 2010, the trial court issued a new preliminary injunction which stated: "IT IS HEREBY ORDERED that during the pendency of the above-entitled action or until further court order, the County of Orange, Orange County Sheriff's Department, and Orange County Sheriff Sandra Hutchens, Defendants/ Respondents in the above-entitled matter, their employees and agents are hereby enjoined and restrained from filling any Deputy Sheriff positions which existed in the jail system on September 24, 2010, with employees classified as CSAs other than were in effect on September 24, 2010. [¶] The above injunction shall issue and become effective upon [the Association]'s filing an undertaking in the amount of $10,000 as required by law. [¶] The Preliminary Injunction previously signed and issued by the Court on September 28, 2010, is superseded and supplanted by this Order."

## V.

### OCEA INTERVENES IN THE ACTION, SEEKING DECLARATORY RELIEF AGAINST THE ASSOCIATION AND DEFENDANTS.

In mid-October 2010, OCEA intervened in the action, by filing a complaint in intervention seeking "a judicial determination that: (a) [the] County lawfully created the classification of [CSA] to perform duties by employees represented by [OCEA]; (b) the duties and responsibilities performed by the employees occupying the classification of [CSA] were not subject to meet and confer or impasse procedures between the . . . County and [the] Association . . . ; [(]c) employees currently occupying the classification of [CSA] and vested with their current duties and responsibilities were properly placed within the bargaining unit represented by the [OCEA]; (d) employees currently occupying the classification of [CSA] are vested with a property interest and

8

constitutional and statutory rights to continue in their current classification, salary and benefits; (e) any future vacancy in the classification of [CSA] should be filled by eligible employees within the bargaining unit represented by [OCEA]; (f) any change in work performed or changes to wages, hours or working conditions by employees occupying the classification of [CSA] must be preceded by advanced written notice to [OCEA] and the opportunity of [OCEA] to meet and confer with [the] County as well as to exhaust any and all impasse procedures before implementation; and (g) [the] Association . . . is estopped from challenging the creation or placement of the classification of [CSA] in [OCEA]'s bargaining unit by failure to exhaust administrative remedies."

## VI.

### DEFENDANTS APPEAL; THE PRELIMINARY INJUNCTION AND THE TRIAL COURT PROCEEDINGS ARE STAYED.

Defendants appealed from the order issuing the preliminary injunction against them, arguing the Association failed to establish a likelihood of prevailing on the merits of its claims and further failed to show it would suffer interim harm in the absence of such an injunction. In the alternative, defendants also argued the amount of the undertaking ordered by the trial court was insufficient.

We granted defendants' requests to stay the preliminary injunction and trial court proceedings (including trial which was scheduled for March 2011) pending resolution of their appeal.

## VII.

### THIS COURT AFFIRMS ORDER ISSUING PRELIMINARY INJUNCTION.

In September 2011, in an unpublished opinion, this court affirmed the trial court's order issuing a preliminary injunction and imposing a $10,000 undertaking.

9

(*Association of Orange County Deputy Sheriffs v. County of Orange* (Sept. 28, 2011, G044502) [nonpub. opn.].)  In our opinion, we explained in part:  "Well-established California Supreme Court precedent, including *International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 277 . . . , *Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 630 . . . , and *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 655 . . . , is directly on point with the issues raised in this case.  These opinions establish that a public employer must meet and confer with the bargaining unit regarding a decision to transfer duties away from that bargaining unit and the impacts of such a decision, when the purpose of the decision was to save labor expenses.  Here, evidence showed defendants permanently transferred duties that historically were performed by members of the Association to employees belonging to a different bargaining unit to save labor costs, but did not meet and confer as to that decision or its impacts on the Association or its members.  Some of the Association members' 'position choices' have been consequently eliminated.  [¶] We hold the trial court did not err by concluding a preliminary injunction should be issued after weighing (1) the likelihood the Association would prove defendants were required to meet and confer as to the decision to use CSA's in the County's jails and the impacts of such a decision but failed to do so, and (2) the relative harm the parties would suffer by the issuance or nonissuance of a preliminary injunction.  We further conclude defendants failed to demonstrate the court erred by imposing a $10,000 undertaking."

In our opinion, we explained that although the gravamen of the Association's complaint against defendants was that they not only violated the MMBA, but also breached a memorandum of understanding, we could not evaluate "the extent to which defendants breached [any such agreement] because those documents are not included in our record."

10

VIII.

THE TRIAL COURT DENIES THE ASSOCIATION'S MOTION FOR SANCTIONS AGAINST DEFENDANTS; THE ASSOCIATION AMENDS COMPLAINT TO ALLEGE DAMAGES.

In January 2012, the Association filed a motion for sanctions against defendants for failure to comply with the preliminary injunction. The trial court denied the motion, explaining in a minute order that the motion for sanctions "appears to be an attempted application for an [order to show cause] re contempt, such applications should be sought with caution [citation], the declaration in support of the motion is light years from pleading contempt elements, none of the apparent contemnors has been personally served, the sanctions sought are not clearly specified, and no hearing would be held before arraignment in any event."

The Association filed a first amended complaint in which the Association reiterated its claims that defendants breached the MOU and violated the MMBA. The first amended complaint repeated the Association's prayer for a writ of mandate and injunctive relief, and also included the allegation that the Association suffered damages in excess of $25,000.

IX.

FOLLOWING TRIAL ON THE FIRST AMENDED COMPLAINT, THE COURT ISSUES A STATEMENT OF DECISION AND ORDERS ISSUANCE OF PEREMPTORY WRIT OF MANDATE, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; THE ASSOCIATION APPEALS.

Following trial on the first amended complaint and OCEA's complaint in intervention, the court issued a statement of decision and an order for the issuance of a peremptory writ of mandate. The trial court's order also granted the Association limited injunctive relief and granted OCEA the declaratory relief it sought in its complaint in intervention.

11

## A.

### *Statement of Decision*

The trial court issued a statement of decision, setting forth its conclusions of law which, as pertinent to the issues raised in this appeal, included (1) defendants have a duty to meet and confer with the Association regarding the impacts of the CSA classification on the wages, hours, and working conditions of deputy sheriffs, pursuant to the MMBA; (2) defendants' failure to bargain the CSA classification's impacts on deputy sheriffs during the negotiations for the MOU was not in bad faith; (3) defendants did not have a duty to meet and confer pursuant to the MOU "because no applicable provision of the MOU requires meet and confer or dictates specific procedures for meet and confer"; (4) the County's assignment of the CSA classification to OCEA for representation was reasonable because OCEA represented other nonsworn classifications with similar salary scales and retirement benefits; (5) the Association failed to appeal the decision to assign the CSA classification to the OCEA bargaining unit within 15 days as required by the employee relations resolution; (6) "[b]efore removal of CSAs from their current job assignments/positions, meet and confer pursuant to the MMBA would be required," and, therefore, the court "does not have the Constitutional authority to order the removal of particular individuals from their positions"; and (7) "[t]he Court does not have power to remove CSAs from OCEA and place them in [the Association]'s bargaining unit because to do so would violate MMBA."

In addition to the conclusions of law listed *ante*, in the statement of decision, the trial court stated: "[The Association] cannot assert the [MOU's] 'zipper clause' . . . to prevent meet and confer regarding the CSAs from occurring until contract negotiations open with the County of Orange in fall, 2012. Nor was it proper for [the Association] to raise the need to negotiate the CSA classification in 2008-2009, but then

12

assert the 'zipper clause' as a basis to refuse to meet and confer about the issue until the MOU was open for negotiations in 2009.  [¶] The 'zipper clause' is intended to protect a party to the MOU from having negotiations forced upon it during the term of the contract; it is not intended to allow a party to identify and demand that an issue is subject to meet and confer but thereafter refuse to meet and confer until the contract is open for negotiations.  Such an interpretation would frustrate the purpose of the MMBA and constitute an illegality in the contract."

B.

*The Trial Court's Order Issuing Peremptory Writ of Mandate, and Granting Injunctive Relief to the Association and Declaratory Relief to OCEA*

The trial court's order stated in pertinent part:

"1.  The Petition for Writ of Mandate and Complaint for Injunctive Relief is **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:

"a.  [The Association]'s request, as set forth in the FAC [(first amended complaint)], for a writ of mandate to issue commanding County/Sheriff to meet and confer pursuant to the MMBA is **GRANTED** as set forth below in paragraph 2;

"b.  [The Association]'s request, as set forth in the FAC, for a writ of mandate to issue commanding County/Sheriff to meet and confer pursuant to the operative Memorandum of Understanding is **DENIED**;

"c.  [The Association]'s request, made at trial but not pled in the FAC, for a writ of mandate to issue commanding County/Sheriff to remove CSA's from the [OCEA] and place them in the [Association] bargaining unit is **DENIED**;

"d.  [The Association]'s request, made at trial but not pled in the FAC, for a writ of mandate to issue commanding the County Human Resources Department to comply with the Employee Relations Resolution is **DENIED**;

13

"e. [The Association]'s request, made at trial but not pled in the FAC, for a writ of mandate to issue commanding County/Sheriff to remove CSAs from positions worked by Deputy Sheriffs in the Orange County jails as of July 1, 2009, is **DENIED**;

"f. [The Association]'s request, made at trial but not pled in the FAC, for a writ of mandate to issue commanding County/Sheriff to return work and positions to [the Association] bargaining unit members is **DENIED**;

"g. [The Association]'s request, made at trial but not pled in the FAC, for an injunction to issue mandating that County/Sheriff remove CSAs from Deputy Sheriff positions in the Orange County jails as of July 1, 2009, is **DENIED**;

"h. [The Association]'s request, as set forth in the FAC, for an injunction to issue prohibiting County/Sheriff in the future from assigning CSAs to Deputy Sheriff positions in the Orange County jails until such time as [the Association] and County/Sheriff meet and confer is **GRANTED as follows**: (1) County/Sheriff is enjoined from placing CSAs in the Orange County jails, except to replace those positions currently occupied and vacated, for whatever reason, by CSAs, pending resolution of the meet and confer between County/Sheriff and [the Association] or in the alternative, pending County action after impasse or upon further Court order; (2) Except for those positions that CSAs already occupy in the jail as noted above, the County/Sheriff is enjoined from placing new CSAs in positions previously occupied by deputy sheriffs and later vacated by deputy sheriffs, for whatever reason, pending resolution of the meet and confer between County/Sheriff and [the Association] or in the alternative, pending County action after impasse or upon further Court order;

"i. [The Association]'s request, made at trial but not pled in the FAC, for an injunction to issue prohibiting County/Sheriff from declaring impasse and imposing last, best and final offer unless impasse is resolved by fact finding and mediation is **DENIED**.

14

"j.  The preliminary injunction originally ordered on October 14, 2010, is vacated.

"2.  A peremptory writ of mandate shall issue under seal of this Court commanding County/Sheriff to engage in meet and confer and seek to reach agreement with [the Association] on the issue of the impacts of the CSAs on the wages, hours, and working conditions of Deputy Sheriffs in the Orange County jails.  The peremptory writ shall be in the form attached hereto as *Exhibit A*.

"3.  [The Association] is ordered to engage in meet and confer and seek to reach agreement with County/Sheriff on the issue of the impacts of the CSAs on the wages, hours, and working conditions of Deputy Sheriffs in the Orange County jails.

"4.  This Court shall reserve and retain jurisdiction over this action until such time as County/Sheriff file a return evidencing that it has complied with the attached *Peremptory Writ of Mandate*.

"5.  County/Sheriff shall file a return to this writ no later than fifteen days from 6/20, 2012; on 7/5, 2012.  Hearing on the return shall be held on 8/6, 2012, at 8:30 AM in Department C-14.

"**IT IS FURTHER ORDERED AND DECREED**, as to the Cross-Complaint filed by OCEA that:

"6.  OCEA's requests for Declaratory Relief are **GRANTED**.  OCEA is entitled to declaratory relief as follows:  (1) The CSA and CSA trainee classifications were lawfully created by County/Sheriff; (2) the CSA and CSA trainee classifications were property placed by County in the OCEA bargaining unit; and (3) CSAs and CSA trainees should not be prohibited from doing duties set forth in their class specifications.

"**IT IS SO ORDERED**."

The trial court issued a peremptory writ of mandate that was consistent with its order.

15

C.

*The Association Appeals and Defendants Request We Consider Additional Evidence They Contend Establish the Association's Appeal Is Moot.*

The Association appealed. Defendants filed a "Motion to Take Additional Evidence to Establish Occurrence of Event Rendering the Appeal Moot." The Association filed written opposition to the motion.

DISCUSSION

I.

WE DENY DEFENDANTS' MOTION TO TAKE ADDITIONAL EVIDENCE ON APPEAL.

Defendants filed a motion requesting that we take additional evidence in the form of the declaration of the County's assistant human resources director, Terri Bruner, "in order to establish the occurrence of events rendering this appeal moot." Defendants' motion was brought under Code of Civil Procedure section 909 and California Rules of Court, rule 8.252.

Code of Civil Procedure section 909 provides: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be

16

finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

Bruner's two-and-one-half-page declaration summarizes negotiations between defendants and the Association regarding the CSA classification from April to October 2012, and concludes by stating: "The County's proposal regarding the CSA classification remains on the bargaining table, though no final agreement on the issue has been reached." Defendants' moving papers fail to analyze how Bruner's declaration establishes the mootness of the issues in this appeal. Furthermore, defendants' motion does not include a statement of proposed findings as required by rule 8.252(b) of the California Rules of Court, which states: "A party may move that the reviewing court make findings under Code of Civil Procedure section 909. The motion must include proposed findings." Defendant's motion is therefore denied.

II.

GENERAL LEGAL PRINCIPLES GOVERNING WRITS OF MANDATE AND THE PROVISION OF INJUNCTIVE RELIEF; THE APPLICABLE STANDARD OF REVIEW

A writ of mandate will issue to "compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station" (Code Civ. Proc., § 1085, subd. (a)), "where there is not a plain, speedy, and adequate remedy, in the ordinary course of law" (Code Civ. Proc., § 1086). The writ will issue against a county, city, or other public body, or against a public officer. (*Housing Authority v. City of L. A.* (1952) 38 Cal.2d 853, 869-871; *County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 653.) The Association could seek a writ of mandate to challenge the County's alleged breach of its duty under the MMBA. (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 541; *Coachella Valley Mosquito & Vector*

17

*Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1077, fn. 1.)

"In reviewing the trial court's denial of the writ, we must determine whether its findings and judgment are supported by substantial evidence. However, where the facts are undisputed and a question of law is involved, we may exercise our independent judgment." (*Riverside Sheriff's Assn. v. County of Riverside* (2003) 106 Cal.App.4th 1285, 1289.)

"The grant or denial of a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion. [Citation.] The exercise of discretion must be supported by the evidence and, 'to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such factual findings under a substantial evidence standard.' [Citation.] We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences to support the trial court's order." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.)

III.

THE ASSOCIATION'S CHALLENGES TO THE TRIAL COURT'S
ORDER ARE WITHOUT MERIT.

"The MMBA applies to local government employees in California." (*Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 630 (*Claremont*).) Under the MMBA, a public employer and a recognized employee organization have a """"mutual obligation personally to meet and confer promptly upon request by either party . . . and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for

the ensuing year."''" (*International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 271.) The obligation to bargain in good faith requires that the parties "must genuinely seek to reach agreement." (*Ibid.*) The MMBA does not require that the parties actually reach an agreement. (*International Assn. of Fire Fighters, Local 188, AFL-CIO*, *supra*, at p. 271.) "[A] public employer has the ultimate power to reject employee proposals on any particular issue." (*Ibid.*; see *Claremont*, *supra*, at p. 630 ["Even if the parties meet and confer, they are not required to reach an agreement because the employer has 'the ultimate power to refuse to agree on any particular issue'"].)

As described in detail *ante*, the trial court, in awarding OCEA declaratory relief, found that defendants' creation of the CSA classification and the placement of CSA's in the OCEA bargaining unit constituted lawful conduct. The trial court, however, also found that the *impacts* or *effects* of the placement of CSA's in the County jail system on deputy sheriffs, who belong to the Association's bargaining unit, fell within the scope of representation under the MMBA, and, thus, were subject to the meet-and-confer requirements of the MMBA. (See *Claremont*, *supra*, 39 Cal.4th at p. 635 [although employer's fundamental policy decision might not be subject to meet-and-confer requirements of the MMBA, the effects of that decision on wages, hours, or other conditions of employment might be subject to those requirements].)

The trial court granted the Association's petition to issue a writ of mandate by ordering the parties to meet and confer within 15 days of the date of the court's order. The court also granted the Association injunctive relief against defendants, prohibiting them from placing any new CSA's in the County jail system into positions not already filled by CSA's until the court determined the mandated meet-and-confer requirements were satisfied.

The Association's appeal is limited to challenging the trial court's order issuing the writ of mandate and providing injunctive relief on behalf of the Association, on the ground the court provided insufficient relief which failed to make the Association whole. Before we address the Association's arguments challenging the relief provided by the trial court, we note the Association does not challenge any of the court's factual findings as set forth in the statement of decision. In addition, the Association does not mount any challenge to the declaratory relief provided to OCEA, which included a judicial declaration that defendants lawfully created the CSA classification, the CSA classification was properly placed by the County in the OCEA bargaining unit, and CSA's "should not be prohibited from doing duties set forth in their class specifications." We address the Association's arguments challenging the trial court's order issuing a writ of mandate and injunctive relief, in turn.

A.

*The Association Fails to Show How the Trial Court's Order Issuing a Writ of Mandate Commanding Defendants to Immediately Meet and Confer with the Association Constituted an Abuse of Discretion.*

The Association argues the trial court's order issuing a writ of mandate commanding the parties to meet and confer about the impacts of the CSA classification on deputy sheriffs within 15 days (by July 5, 2012) was in error. The Association contends the parties had agreed in the MOU that absent mutual agreement, negotiations regarding issues within the scope of representation would not occur during the term of the MOU, but only when negotiations for the next memorandum of understanding opened (which was scheduled to occur in August 2012). In support of its argument, the Association exclusively relies on the so-called zipper clause of article XXIII of the MOU, which is entitled "MODIFICATION AND WAIVER," and states the following in its entirety: "Except as specifically provided herein, it is agreed and understood that the parties hereto reserve the right, only upon mutual agreement, to negotiate with respect to

20

any subject or matter covered herein or with respect to any other matter within the scope of representation during the term of the Memorandum of Understanding."[3]

The Association argues the trial court was without authority to require the parties to immediately meet and confer regarding the impacts of the CSA classification on deputy sheriffs and, by ordering the parties to do so, the court ignored article XXIII of the MOU and thus violated the contracts clause of the California Constitution. (Cal. Const., art. I, § 9 ["A . . . law impairing the obligation of contracts may not be passed"]; *Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1169-1170 ["'the state contract clause has been construed also to apply to judicial action'"].) Conspicuously absent from the Association's appellate briefs is relevant legal analysis explaining how the trial court's order runs afoul of the California Constitution under the circumstances of this case. The court's order did not purport to rewrite the MOU; rather, it attempted to ameliorate the harm caused by defendants' failure to meet and confer on the effects of the CSA classification on deputy sheriffs before entering the MOU, in the context of the already existing placement of CSA's in the County jail system.

In any event, the express language of article XXIII of the MOU prohibits the unilateral modification of that agreement by either party. Article XXIII does not constitute an integration provision. As drafted, it cannot be reasonably interpreted to operate as a limitation on the authority of the trial court to fashion a suitable equitable

---

[3] The Association also argues the trial court's order contravened language contained in the employee relations resolution, which the Association asserts was "a mirror image" of article XXIII of the MOU. The pertinent language of the employee relations resolution states that "negotiations may be reopened during the course of the Memorandum of Understanding only upon the agreement of both the Personnel Director and the Exclusively Recognized Employee Organization." It is undisputed that the MOU does not address the CSA classification and the CSA classification was not a negotiated term of the MOU. Hence, the language of the employee relations resolution does not support the Association's argument.

21

remedy to address the parties' failure to negotiate the impacts of a decision that has already been, at least partially, implemented.

Here, the trial court was faced with defendants' failure in 2009 to meet and confer with the Association, regarding the effects of the CSA classification before the parties agreed on the MOU. During the term of the MOU, the Association sought court intervention to require defendants to meet and confer on that issue. But, as explained in its opening brief, the Association in the same breath refused to meet and confer on the issue until the term of the MOU expired and the beginning of "regular collective bargaining [that] was set to begin in August 2012 and continue for up to ninety (90) days."

The Association's failure to cite legal authority or provide legal analysis showing how the trial court exceeded its authority in fashioning this remedy is fatal to the Association's challenge. As appellant, the Association has the burden of proving error and that burden includes the obligation to present argument and legal authority on each point raised. (E.g., *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1333-1134.) As explained by the appellate court in *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956: "'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.] 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.'"

B.

*The Association's Challenges to the Injunctive Relief Order Are Similarly Without Merit.*

The Association argues the injunctive relief ordered by the trial court was inadequate. In its opening brief, the Association argues to "make [it] whole as a result of

22

Defendants' failure and refusal to meet and confer concerning CSAs during the 2009 negotiation period, the injunctive relief should place the parties in their respective bargaining positions as of that bargaining period and afford [the Association] the opportunity to negotiate the value of the lost work to CSAs in conjunction with all other issues for bargaining. This effectuates the purpose of the MOU zipper clause and the [employee relations resolution] zipper clause."

The Association's proposed remedy, however, was rejected by the trial court. As set forth in the statement of decision, "plac[ing] the parties in their respective bargaining positions as of that bargaining period" would require the removal of CSA's who had been placed in the County jail system either before the trial court issued the preliminary injunction, or after this court stayed the preliminary injunction, pending the first appeal in this matter in which defendants challenged the preliminary injunction. In the statement of decision, the trial court explained it did not have the authority to order the removal of particular individuals from their positions, and stated the removal of employees would be subject to the meet-and-confer requirements of the MMBA as well. In its appellate briefs, the Association does not address the trial court's stated reasons or otherwise cite legal authority showing the trial court had the authority to provide the relief the Association proposes.

In its opening brief, the Association also asserts defendants disobeyed the preliminary injunction because they failed to return staffing to the level which existed on September 24, 2010. As discussed *ante*, the preliminary injunction ordered that "during the pendency of the above-entitled action or until further court order, [defendants] . . . are hereby enjoined and restrained from filling any Deputy Sheriff positions which existed in the jail system on September 24, 2010, with employees classified as CSAs other than were in effect on September 24, 2010." As also explained *ante*, this court issued a stay of the preliminary injunction, pending resolution of defendants' appeal from the order

23

issuing the preliminary injunction. Although we affirmed the preliminary injunction in our opinion filed on September 28, 2011, neither this court nor the trial court ever ordered defendants, upon the affirmance of the preliminary injunction and dissolution of the stay on its enforcement, to remove any CSA's who had been placed in the County jail system during the stay. Furthermore, the Association has failed to cite or analyze any evidence regarding the timing and nature of any alleged violation of the preliminary injunction.

In light of the Association's failure to demonstrate error, we affirm the trial court's order.

## DISPOSITION

The order is affirmed. Respondents shall recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

IKOLA, J.

24